UNITED STATES of America

v.

Richard Earl DUNN, Appellant.

UNITED STATES of America

v.

Angelo Michael FLEMING, Appellant.

UNITED STATES of America

v.

Charles Duke GREEN, Appellant.

Nos. 87–3025, 87–3029 and 87–3030.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 25, 1988.
Decided May 13, 1988.

Richard S. Stern, Washington, D.C., (Appointed by this Court), for appellant, Richard Earl Dunn.

Ed Wilhite, Washington, D.C., (Appointed by this Court), for appellant, Angelo M. Fleming.

Daniel E. Ellenbogen, Washington, D.C., (Appointed by this Court), for appellant, Charles Duke Green.

Geoffrey R. Brigham, Atty., Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

In these consolidated cases defendants Richard E. Dunn, Angelo Fleming and Charles Duke Green appeal their convictions for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 (1982). The main issue is Green's argument that the trial court violated Fed.R. Evid. 704(b) when it allowed a police detective to testify that the quantities of drugs, drug-packaging material, drug paraphernalia and weapons located in the townhouse where defendants were arrested indicated the presence of a retail drug operation. We find no violation of Rule 704(b), which merely bans an expert witness's expressing an opinion as to whether a defendant has "the mental state or condition constituting an element of the crime charged."[1]

Here, Officer Coates testified as to criminal modus operandi. He explained that the packaging paraphernalia in the townhouse, such as vials and wax paper bags, were common among drug distributors. Tr. at 390, 404–06, 411–12. He also noted that I-beam scales, measuring spoons, and man-

nitol were tools of the narcotics trade. *Id.* at 414–16. He further gave his opinion as to the overall nature of the activities being carried on in the townhouse: "It's a retail operation used for the everyday distribution, distributing of primarily crack and heroin." *Id.* at 416. But he never expressed an opinion on whether the particular defendants present in the townhouse had the requisite intent to distribute cocaine.

Green's theory evidently is that the opinion testimony violated Rule 704(b) because, when combined with the evidence of the condition of the townhouse, and of defendants' presence therein and activities on the occasion of their arrest, it might lead a jury to infer that defendants intended to distribute cocaine.

■ Green's logic would swallow the permissive aspects of Rule 704. All expert evidence assists jurors in analyzing and drawing inferences from other evidence; in so doing it may support inferences as to ultimate intent. Indeed, all evidence as to what a defendant *did* bears upon what he *intended to do.* Suppose, for example, that an expert testifies at a homicide trial that the victim died of a poison administered daily in small doses over a long period. The evidence goes not only to what happened, but suggests extreme premeditation on the part of whoever doled out the poison. It is only as to the last step in the inferential process—a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent.

The Fifth Circuit has recently read Rule 704(b) to permit expert testimony far closer to the ultimate issue of intent than was Officer Coates's. In *United States v. Dotson,* 817 F.2d 1127 (5th Cir.1987), the defendant objected under Rule 704(b) to the

---

1. Rule 704 states:
    (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
    (b) No expert witness testifying with respect to the mental state or condition of a

defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone.

trial court's admission of testimony by the government's tax expert identifying evidence that would indicate willful intent to evade taxes. *Id.* at 1127, 1129, 1132. In rejecting the claim, the Fifth Circuit stressed that "the expert's summary merely explained his analysis of the facts indicating willful evasion" and did not "directly embrace the ultimate question of whether [the defendant] did in fact intend to evade income taxes." *Id.* at 1132. *Contrast United States v. Windfelder*, 790 F.2d 576, 582 (7th Cir.1986), where the court found that Rule 704(b) would prohibit an IRS agent from testifying that his analysis of the defendant's accounts and tax returns led him to conclude that the defendant had "intentionally understated his income."

Green's theory would seem to bar testimony as to modus operandi, which in fact is commonly admitted. Although the appellate courts approving such admission have not mentioned Rule 704(b), the stream of favorable decisions would be puzzling if Green's thesis were valid. *See United States v. Espinosa*, 827 F.2d 604, 611–13 (9th Cir.1987) (expert testifies that evidence indicates use of defendant's apartment as "stash pad" for money and narcotics); *United States v. Resto*, 824 F.2d 210 (2d Cir.1987) (testimony on role of a "steerer" in a street drug operation); *United States v. Nersesian*, 824 F.2d 1294, 1307–09 (2d Cir.) (testimony on the meaning of narcotics-related code words), *cert. denied,* —— U.S. ——, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *United States v. Monu*, 782 F.2d 1209, 1210–11 (4th Cir.1986) (testimony on purity of heroin and testimony that balance scale was tool of heroin distribution); *United States v. Cruz*, 797 F.2d 90, 96 (2d Cir.1986) (testimony on use of food stamps in narcotics sales); *United States v. Young*, 745 F.2d 733, 760–61 (2d Cir.1984) (testimony about the role that "heroin mills" play and the type of paraphernalia that one would expect to find at a mill, and that material found in an apartment was precisely what one would expect to find in a mill), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

Accordingly, we conclude that the trial court's admission of expert testimony did not violate Rule 704(b).

■ We also reject Green's objections that the testimony should have been disallowed as overly prejudicial and cumulative under Fed.R.Evid. 403 and as not meeting Fed.R.Evid. 702's requirement that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." The trial judge has broad discretion on both issues. *United States v. Weisz*, 718 F.2d 413, 431 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984) (Rule 403); *United States v. Johnson*, 527 F.2d 1381, 1384 (D.C.Cir.1976) (assessment of need for expert testimony). Federal courts often permit experts to testify on narcotics operations because jurors are commonly unfamiliar with the methods by which drug dealers attempt to conceal their activities. *United States v. Daniels*, 723 F.2d 31, 33 (8th Cir.1983). We thus find no abuse of discretion as to either point.

We have examined defendants' other challenges to their convictions, but conclude that the only one that requires discussion is Fleming's claim that there was insufficient evidence that he possessed cocaine with intent to distribute. At issue here are both elements of this charge: possession and intent to distribute. With respect to the first, we have previously held that possession of cocaine may be "constructive," given that "[i]t is rare that drugs are found to be in the 'actual' possession of the defendant." *United States v. Pardo*, 636 F.2d 535, 548 (D.C.Cir.1980). Constructive possession exists when the defendant is "knowingly in a position, or [has] the right to exercise 'dominion and control' of the drug either personally or through others." *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982).

■ While mere presence on the premises, proximity to the drug, or association with drug dealers is insufficient to prove possession, "presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence

linking the accused to an ongoing criminal operation of which that possession is a part." *United States v. Staten,* 581 F.2d 878, 885 (D.C.Cir.1978) (footnote omitted). Here the police not only found Fleming in a townhouse that served as a retail drug operation, but saw him at the moment of their entry pitching things into the family room. Police found behind the family room couch—which was situated one foot away from where Fleming made the pitching motion—a key case containing nine vials of cocaine. On the couch, they found a loaded .38 caliber revolver, a tool of the narcotic trade. Fleming's connection to the gun suggests he exercised control over the drugs in the house. Furthermore, Fleming could see in plain view scores of cocaine vials and other drugs scattered throughout the house. (The government also argues that Fleming demonstrated a guilty conscience by stepping back and placing his hands against the wall, anticipating his arrest. We find it hard to ascribe much significance to these moves.) Under these circumstances, we find a reasonable jury could find that Fleming constructively possessed cocaine.

■ In our view a reasonable jury could also find that the evidence demonstrated the necessary intent to distribute cocaine. Drugs and drug packaging paraphernalia littered the house. Just before arrest Fleming had evidently cast off cocaine packaged in nine vials ready for distribution. (Officer Coates testified that the vials are often used by drug distributors.) As we have previously recognized, "[a] number of decisions in this circuit have already made clear that intent to distribute may be inferred from possession of drug-packaging paraphernalia or a quantity of drugs larger than that needed for personal use." *United States v. Castellanos,* 731 F.2d 979, 985 (D.C.Cir.1984) (possession of approximately six ounces of cocaine and drug paraphernalia indicated intent to distribute). Moreover, a finding of intent to distribute personally "is unnecessary as long as distribution by someone is the end purpose of the possession." *United States v. Staten,* 581 F.2d at 886.

Fleming appeared also to have just shed possession of a loaded .38 revolver. An expert testified that retail drug operations run from houses often contain armed guards to protect the drugs. We have held that juries may infer an intent to distribute not only from possession of drug packaging paraphernalia, but also from the presence of firearms. As we recently noted, "it has uniformly been recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia." *United States v. Payne,* 805 F.2d 1062, 1065 (D.C.Cir. 1986).

Finally, the expert testimony demonstrated that the presence of guns, drugs, and certain paraphernalia in the house pointed to a drug distribution operation. While conceivably Fleming could have been a buyer, we find that Fleming's presence in the house, combined with his connection to a loaded revolver and a large quantity of drugs packaged for distribution, could lead a reasonable jury to infer that he was part of the distribution operation. Thus we conclude that "the evidence was susceptible to the interpretation that appellant was criminally involved in the criminal enterprise, and whether in fact he was or not was a question for the jury." *United States v. Staten,* 581 F.2d at 886. Accordingly, we affirm Fleming's conviction as well as those of the other defendants.

*Affirmed.*