986 F.2d 546
 300 U.S.App.D.C. 83
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Dawn N. JAMES, Appellant.
 No. 91-3298.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 16, 1993.
 
 Before WALD, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal of the defendant from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 91-3298, the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 On May 8, 1991, Sergeant Arthur Lawson of the Amtrak Special Investigations Unit approached Ms. James as she was disembarking from a train arriving at Union Station from New York, displayed his credentials and asked to speak with her. Over the course of the interview, James produced a one-way ticket, purchased with cash, from New York, denied having any identification, and denied transporting any illicit drugs. James next consented to a search of her tote bag, but when Sergeant Lawson got to one end of the bag, she placed her hand on the bag's zipper and stated, "I have personal items in there." At that point, Lawson terminated the search but asked whether a narcotics dog could sniff the bag, to which James responded "Sure, go ahead." The dog immediately alerted on the bag and James was asked to accompany Sergeant Lawson to the Amtrak police office. At the office Lawson again received consent to search the tote bag and inside found a brown paper bag containing 354.1 grams of crack cocaine.
 
 
 5
 At trial, police officer David Stroud testified for the government as an expert witness on the modus operandi of drug couriers. He explained that possession of 354.1 grams of crack cocaine was consistent with possession with intent to distribute and utterly inconsistent with personal use. Officer Stroud further testified that New York City was considered a "source" city because the amount of cocaine carried by James would cost approximately $17,700 in New York, but could be sold in Washington, D.C. in 2,361 separate $20 retail pieces for a gross revenue of $47,220 and gross profits of around $20,000. Next, Officer Stroud noted that drug dealers prefer trains and busses over airplanes for transporting drugs between cities, most likely because of the tighter security measures at airports, and that dealers provide drug couriers, known as "mules," with one-way tickets, purchased with cash around a half-hour before departure. On cross-examination, Stroud testified that there was no "special dress" for drug couriers, and that many persons who do not transport drugs also purchase tickets in the same manner as drug couriers.
 
 
 6
 In her defense, James testified that she was unaware of the drugs in her bag, and explained that she cooperated with the police officers because she believed she had nothing to hide. A jury found James guilty of possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii), and she was sentenced to 151 months in prison.
 
 
 7
 James appeals her conviction on the ground that the district court erred in admitting opinion testimony regarding the modus operandi of drug couriers because such information was beyond the qualifications of the government's expert, was not relevant, was prejudicial, and was not beyond the ken of the jury. District courts enjoy wide latitude in admitting evidence and will only be overturned for an abuse of discretion. See United States v. Dunn, 846 F.2d 761, 763 (D.C.Cir.1988). After reviewing the evidence in this case, we find that the district court's admission of Officer Stroud's testimony did not run afoul of FED.R.EVID 401, which permits the admission of evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," FED.R.EVID 403, which excludes unduly prejudicial evidence, or FED.R.EVID 702, which permits expert testimony that "assist[s] the trier of fact to understand the evidence or to determine a fact in issue."
 
 
 8
 Without question, Officer Stroud, a 22 year veteran of the Narcotics Task Force arrest team with extensive specialized training and experience in over 4,000 drug cases, was qualified to testify regarding the procedures followed by drug couriers. Further, in two recent cases, this Court has held that expert testimony that a defendant's actions matches a common criminal modus operandi is generally admissible. See United States v. Williams, 980 F.2d 1463 (D.C.Cir.1992); United States v. Boney, 977 F.2d 624 (D.C.Cir.1992); cf. United States v. Doe, 903 F.2d 16 (D.C.Cir.1990) (expert testimony that Jamaicans were taking over the drug trade unfairly prejudicial where defendants were Jamaican). As we explained in Boney, "it is part of the normal role of the expert not merely to describe patterns of conduct in the abstract, but to connect actions in a specific case to those patterns." 977 F.2d at 629. Finally, consistent with our decisions in prior cases, we find that Officer Stroud's testimony regarding the operations of drug dealers was not within the common knowledge of the average juror and therefore properly admitted. See id. at 628-29; Dunn, 846 F.2d at 763; but cf. United States v. Castillo, 924 F.2d 1227, 1233 (2d Cir. 1991) (narcotics expert's testimony regarding practice by drug dealers of requiring customers to sample drugs before leaving the scene in order to flush out undercover police officers was "certainly well within the reach of any juror's common sense"). Indeed, the district judge in this case explained that he was as "knowledgeable as any juror," but admitted that the "use of trains, public transportation, in the Northeast corridor ... [is] not within the ken even of the court."
 
 
 9
 On appeal, James argues for the first time that the district court should have lowered her sentence under § 3B1.2 of the Guidelines which provides for decreases in the offense level of defendants who play a "minimal" or "minor" role in the criminal activity. Counsel correctly conceded at oral argument that this argument was not raised below, and is therefore waived. See United States v. Bradshaw, 935 F.2d 295, 303 (D.C.Cir.1991). The vague equal protection and due process arguments that James did press before the district court have not been argued on appeal and therefore we do not consider them.
 
 
 10
 For the reasons given, we affirm the conviction and sentence.