**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Derrick D. BOYKINS, Stacy E. Banks, and Percy E. Williams, Defendants–Appellants.**

Nos. 92–3915, 92–3916, 92–3917 and 92–4001.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1993.

Decided Nov. 19, 1993.

---

Cale J. Bradford (argued), Office of the U.S. Atty., Indianapolis, IN, for U.S.

Douglas C. McMorris, Indianapolis, IN, Scott McFarland (argued), Muncie, IN, for Derrick D. Boykins in No. 92–3915.

James B. Mitchell, Jr. (argued), Marquette, MI, for Stacy E. Banks in No. 92–3916.

Scott McFarland (argued), Muncie, IN, for Percy E. Williams, in Nos. 92–3917 and 92–4001.

Before BAUER and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

BAUER, Circuit Judge.

Derrick Boykins, Stacy Banks, and Percy Williams were convicted of possession with the intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). They were also tried and convicted of using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), (2). All three appeal their convictions and Williams appeals his sentence. We affirm.

## I.

At approximately 4:40 in the afternoon of January 13, 1992, Officer Bruce Wiemer of the Muncie (Indiana) Police Department was in the parking lot of the Vogue Dry Cleaners in Muncie, Indiana. Officer Wiemer was off duty at the time. The sound of rapid gunfire drew Wiemer's attention to the street in front of the dry cleaners. He observed the gunfire coming from the open side door of a maroon Pontiac van moving down the street. Though he could not discern who was firing the gun, Wiemer identified Banks as an occupant in the rear of the van and Williams as an occupant in the middle of the van.

Officer Wiemer followed the van to the Rainbow Lounge which is located approximately half a block from the dry cleaners. The van stopped there and three men, whom Wiemer identified at trial as Banks, Boykins and Williams, got out. At that point Wiemer drove to a nearby pharmacy with the intention of calling the police. Outside the pharmacy, Wiemer saw two policemen in a marked police vehicle, Officers Donnie Garrett and Allen Williams. Wiemer informed them of the events he had just witnessed. Garrett and Williams proceeded to the vicinity of the Rainbow Lounge where they identified the van and began to follow it.

After following the van for about one block and radioing for assistance, the policemen turned on their sirens and flashing lights in an effort to get the driver of the van to pull the vehicle over to the side of the road. The driver, later identified as Russell Wayne Davis, refused to do so and a chase ensued in which Officers Garrett and Williams were joined by Officers Steve Baugh and Jeff Watson.

The pursuit led the officers to Vine Street at which point Davis jumped from the moving van, tossed two plastic bags on the ground and fled. The van continued to roll until it collided against the side of a nearby apartment building where the police arrested the occupants. Davis was never apprehended but Officer Garrett retrieved both bags, one of which contained less than four grams of cocaine and the other of which contained 10.74 grams of cocaine.

Derrick Boykins was seated in the front passenger seat. A pat-down search of Boykins conducted by Officer Williams revealed a set of hand-held measuring scales and cash in the amount of $396.58. Seated in the middle passenger seat was Percy Williams who, during the course of his arrest, attempted to reach for something in his pants. A

search of his person uncovered a .22 caliber gun, containing four live rounds of ammunition, and four rock-like quantities of cocaine weighing approximately .39 gram. Stacy Banks was seated in the rear passenger seat. The police searched him and discovered two shotgun shells. He later admitted to owning a shotgun found in the rear of the van.

After the three suspects were in custody, the police searched the interior of the van. On the floor between the driver seat and the front passenger seat, the police found a loaded .38 caliber revolver. In front of the middle row of passenger seats, the police found a recently fired semi-automatic "cobra" handgun and a quantity of cocaine which weighed less than four grams. The search of the van also uncovered the loaded shotgun which Banks admitted owning. All items discovered during the search of the appellants and the van were retained by Officer Cox who, later the same day, turned them over to Officer Winkle of the Muncie Police Department. Officer Garrett delivered the cocaine discarded by Davis to Officer Winkle as well.

Boykins, Banks, and Williams were each indicted on February 11, 1992 for possession with the intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count I) and for using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), (2) (Count II). On September 10, 1992, a jury found Banks, Boykins and Williams guilty as charged on both counts in the indictment.

At the sentencing hearing, the court sentenced Boykins and Banks to 60 months imprisonment followed by four years supervised release on the first count and 60 months imprisonment followed by three years supervised release on the second count. Williams was sentenced to 262 months imprisonment followed by five years supervised release on the first count and 60 months imprisonment followed by three years supervised release on the second count.

## II.

Boykins, Banks, and Williams raise several issues on appeal, some jointly and some individually. None of their contentions merits reversal.

### A. Sufficiency of the Evidence

■ Boykins and Banks argue that their convictions under Count I of the indictment should be reversed by this court because the evidence offered by the government at trial was insufficient to support a conviction. Boykins seeks a reversal of his conviction under Count II of the indictment on identical grounds. The standard of review in a sufficiency challenge is well-established. We review the evidence in a light most favorable to the government to ascertain whether "*any* rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991). Neither Banks nor Boykins has met this burden.

### 1. Possession with the Intent to Distribute Illegal Narcotics

■ To obtain a conviction for possession of cocaine with the intent to distribute, the government must prove (1) the defendant knowingly or intentionally possessed cocaine, (2) the defendant possessed the cocaine with the intent to distribute it, and (3) the defendant knew cocaine was a controlled substance. *United States v. Olson*, 978 F.2d 1472, 1479 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). Boykins and Banks testified that they were not in the van when the gunshots were fired and that they knew nothing about the cocaine. On appeal, they contend that the evidence failed to establish beyond a reasonable doubt that they knowingly or intentionally possessed cocaine. The government defends the verdict by using theories of constructive possession and aiding and abetting.

■ The theory of constructive possession requires the government to show that the defendant had "dominion and control" over a particular object. *United States v. Shackleford*, 738 F.2d 776, 784–85 (7th Cir.1984). The government's position is that the occupants of the van were in essence a drug trafficking enterprise with each person playing a specialized role in the venture. Banks,

who was in possession of a shotgun, was in the van to provide security in case anything went wrong. Boykins, seated in the front passenger seat with measuring scales and an abundant amount of cash on his person, was in charge of weighing the cocaine and then selling it. According to the government then, although neither Banks nor Boykins was found with cocaine on their respective persons, their role in the enterprise was sufficient to support a finding of constructive possession.

■ Boykins and Banks argue that the possession of items that are commonly associated with drug trafficking, in this case firearms and the scale, is only relevant to the issue of distribution and has no bearing on the question of possession. Disregarding the presence of the firearms and the scales, they conclude that their convictions for possession were based solely on physical proximity and association, factors which have been deemed insufficient to sustain a finding of possession. *See United States v. McKnight,* 953 F.2d 898 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2975, 119 L.Ed.2d 594 (1992) (proximity); *United States v. White,* 660 F.2d 1178 (7th Cir.1981) (proximity); *United States v. Manzella,* 791 F.2d 1263 (7th Cir.1986) (association). The cases cited in support of this premise do not, however, support such a limited probative value for weapons found on the scene along with illegal narcotics. *United States v. Rush,* 890 F.2d 45 (7th Cir.1989); *United States v. Dunn,* 846 F.2d 761 (D.C.Cir.1988).

In *Rush,* the defendant and an acquaintance were walking toward the defendant's parked vehicle when they were stopped by the police. The acquaintance consented to a search of his locked suitcase and gave the police his keys. The search revealed several packets of heroin. *Rush,* 890 F.2d at 46. Later, when searching the defendant's car, the police discovered a loaded pistol. *Id.* Though the narcotics were never actually in the defendant's car and there was no evidence of actual knowledge on the defendant's part, we held that the presence of a firearm in the defendant's parked vehicle was sufficient to support an inference that the weapon was in the car for the purpose of protecting

the illegal cargo. *Id.* at 49. We added that the weapon was relevant to rebut the defendant's testimony that he was unaware of the suitcase's contents. *Id.* Outside of the defendant's proximity to the narcotics and his association with the owner of the suitcase, the pistol was the only inculpating evidence. Yet this was sufficient to uphold the conviction on a theory of constructive possession.

*Dunn* also fails to support Banks's position. In that case, the court wrote, "presence, proximity, or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Dunn,* 846 F.2d at 763–64 (citing *United States v. Staten,* 581 F.2d 878, 885 (D.C.Cir.1978)). The court went on to state that possession of a loaded gun suggested that the defendant exercised control over drugs in the house where he was found. *Dunn,* 846 F.2d at 764.

Boykins and Banks have not succeeded in meeting their significant burden. Construed in a light most favorable to the government, the evidence in this case supports a finding of constructive possession. Banks was seated inside a van with a loaded shotgun and additional ammunition on his person. Boykins was within reach of two loaded weapons and was found to possess a large sum of cash and a set of scales commonly used by drug traffickers to measure quantities of narcotics. Also inside the van were a quantity of cocaine, a loaded handgun, and a semiautomatic weapon which had been fired while Banks and Boykins were present. The other two occupants of the van had varying quantities of cocaine on their persons and one possessed a loaded .22 caliber handgun. Given this evidence, the jury could reasonably have inferred that Banks, Boykins, and the other occupants of the van were trafficking cocaine and that Banks and Boykins were fully aware of the presence of narcotics in the van.

■ We also agree with the government's position that the jury could have based its conviction of Banks and Boykins on a theory of aiding and abetting. To successfully obtain a conviction for aiding and abetting, the government must prove that the defendant "committed an act that encour-

aged or assisted another in committing the offense, and he must have had the intent to aid in its commission." *United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir.1987), *cert. denied*, 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988). Proof of intent may be inferred from the circumstances. *United States v. Gabriel*, 810 F.2d 627, 636 (7th Cir.1987).

Given the evidence in this case, a rational trier of fact could reasonably have concluded that Boykins and Banks were not innocent passengers and that they were in fact present in the van when the gunshots were fired. Furthermore, the jury could have fairly concluded that Banks carried a firearm to protect the cocaine and that Boykins carried a measuring scale to facilitate the distribution of cocaine.

Finally, Boykins asserts that testimony by defense witness Melodie Lee so unequivocally impeached the testimony of Officer Bruce Wiemer that we should disregard the jury's credibility determination and reverse its findings of fact. However, our function is not "to reweigh the evidence presented at trial nor to reassess witness credibility." *United States v. DePriest*, 6 F.3d 1201 (7th Cir. 1993). The jury's determination that the evidence presented by Officer Wiemer and his fellow policemen was in fact credible is completely reasonable and will not be disturbed on appeal.

### 2. Use and Carrying of a Firearm During and in Relation to a Drug Trafficking Offense.

■ Boykins seeks to have his conviction under Count II of the indictment reversed for lack of sufficient evidence. To obtain a conviction for using and carrying a firearm during a drug trafficking offense, the government must prove (1) that the defendant used or carried a firearm and (2) that this use or carrying was during and in relation to a drug trafficking offense. *United States v. Garrett*, 903 F.2d 1105 (7th Cir. 1990). Boykins argues that the evidence was insufficient to sustain a conviction on the first prong: that Boykins used or carried a firearm.

■ The law does not require that a defendant be found with a firearm on his person during the underlying offense before a conviction can be obtained. Courts in this jurisdiction and others have consistently sustained convictions on less evidence. *See, e.g., United States v. Rosado*, 866 F.2d 967 (7th Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *United States v. Coe*, 718 F.2d 830 (7th Cir.1983); *United States v. Munoz–Fabela*, 896 F.2d 908 (5th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990). In *Rosado*, the defendant's conviction was affirmed even though he was outside of his car and the gun was in the trunk of his car. The defendant in *Coe* was convicted for "carrying" a firearm that was stowed in the glove compartment of a car in which he was riding as a passenger. Finally, in *Munoz–Fabela*, the presence of a gun on the floor of the car within the view and the reach of a defendant was sufficient to sustain a conviction for use and carrying of a firearm. The phrase "using or carrying" as defined by 18 U.S.C. § 924 is clearly broader than physical possession.

The evidence in this case placed Boykins in the front passenger seat of the van. Beside him on the floor of the van was a loaded .38 caliber handgun. Under the seat just behind him was a semi-automatic "cobra" handgun that had been fired while Boykins was present in the van. In light of *Coe*, the fact that Boykins neither owned nor operated the van is irrelevant. The evidence in this case permits the conclusion that Boykins used or carried firearms within the meaning of 18 U.S.C. § 924(c).

### B. Admission of Evidence

■ Williams claims that there was insufficient evidence to establish a chain of custody for the government's exhibits 9 and 10 and that the trial court's admission of this evidence was therefore erroneous.

Exhibits 9 and 10 were offered by the government and admitted into evidence over the objection of defendants' counsel. Exhibit 9 contained approximately 3.4 grams of cocaine and Exhibit 10 contained about 3.96 grams. Officer Winkle, to whom all the physical evidence was ultimately given, was

unsure which of the two quantities was given to him by Officer Garrett and which was given to him by Officer Cox. Williams claims this is significant because Officer Garrett had retrieved the cocaine discarded by Wayne Davis while Officer Cox delivered to Officer Winkle cocaine uncovered by the search of the van. Both exhibits were safely in custody of the Muncie Police Department from the time they were recovered to the time they were offered as evidence. Nevertheless, Williams argues that the trial court's admission into evidence of Exhibits 9 and 10 constitutes reversible error because the chain of custody was not sufficiently established.

The standard for admission of exhibits demands a showing that the exhibit is in substantially the same condition when it is offered as it was when the crime was allegedly committed. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir.1988); *United States v. Aviles*, 623 F.2d 1192, 1197 (7th Cir.1980). "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction," *Aviles*, 623 F.2d at 1198, and will be reversed only upon a showing of clear abuse of discretion. *Lott*, 854 F.2d at 250. In making out its case for admission, the government need not rule out every possibility of tampering, but rather must only show that reasonable precautions were taken to preserve the original condition of the evidence. *Id.*

Where the exhibit's chain of custody is in question but there is no evidence of any tampering, there is a presumption that a system of regularity accompanied the handling of the evidence if the exhibits are at all times within official custody. *Aviles*, 623 F.2d at 1198. Gaps in the chain of custody go to the weight of the evidence rather than its admissibility. *United States v. Jefferson*, 714 F.2d 689, 696 (7th Cir.1983).

The government demonstrated in this case that the exhibits in question were within the custody of the Muncie Police Department while this case was awaiting trial. Williams offered no evidence tending to show that the envelopes containing cocaine were tampered with in any way. The jury could reasonably and easily have concluded that Winkle's ina-

bility to recall who turned over which exhibit did not call the probative value of the evidence into question. In any event, both exhibits contained cocaine. Admitting Exhibits 9 and 10 into evidence was, therefore, proper.

## C. Jury Instructions

Boykins, Banks, and Williams all challenge the sufficiency of particular jury instructions. In reviewing the fitness of final jury instructions to which objections were properly raised in the proceedings below, we must determine from looking at the charge as a whole, "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues...." *Trustees of Indiana Univ. v. Aetna Casualty and Sur. Co.*, 920 F.2d 429, 437 (7th Cir.1990). If the instructions are adequately supported by the record and are fair, accurate summaries of the law, the instructions will not be disturbed on appeal. *United States v. Doerr*, 886 F.2d 944, 960 (7th Cir.1989).

Boykins, Banks, and Williams also argue that the trial court erred by refusing to tender certain jury instructions submitted by them. The standard of review for refused instructions differs from the standard for instructions that were in fact given. A defendant is entitled to an instruction on his theory of the case if he proposes a correct statement of the law, his theory is supported by the evidence, his theory of defense is not part of the charge, and the failure to include an instruction on his theory of defense in the jury charge denied him a fair trial. *United States v. Church*, 970 F.2d 401, 408 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993); *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987). This determination is also made by looking at the jury charge as a whole. *Church*, 970 F.2d at 408.

### 1. Chain of Custody

Banks contends that the trial court's refusal to deliver the following instruction concerning chain of custody seriously impaired his ability to present an effective defense.

In evidence the one who offers real evidence, such as narcotics in a trial of a drug case, must account for the custody of the evidence from the moment it reaches his custody until the moment it is offered in evidence, and such evidence goes to the weight of the evidence.

For example, chain of custody is proven if an officer is able to testify that he or she took control of the item of physical evidence, identified it, placed it in a locked or protected area, and retrieved the item being offered on the day of trial.

Tr. III, 338. Banks claims that without this instruction, the jury could not question the authenticity of the cocaine offered at trial.

 It is not apparent how this instruction might be helpful to a jury. Nor is it clear how the trial court's refusal to tender this instruction denied Banks a fair trial. Once evidence is admitted, jurors are free to credit or discredit that evidence in light of what they observe at trial and their own experience. The instructions given to the jury in this case make that abundantly evident.[1] Giving further instructions on this point would be overkill.

The jury was permitted to hear and evaluate evidence on gaps in the chain of custody. Given the lack of any proof suggesting that the exhibits were tampered with, the jury apparently chose to ignore the gaps and resolved the issue in a manner consistent with its verdict. Assuming *arguendo* then that his instruction accurately reflects the law on chain of custody and that his theory is supported by the evidence, Banks's claim must fail because the absence of the instruction did not render the trial unfair.

### 2. Circumstantial Evidence

 Boykins, Banks, and Williams claim that the trial court's Jury Instruction # 7 was erroneous because it failed to advise the jury that "when evidence is circumstantial

the circumstances must be proved and not presumed or inferred." After distinguishing circumstantial evidence from direct evidence, Jury Instruction # 7 stated:

The law makes no distinction between the weight to be given either direct or circumstantial evidence. Therefore, all the evidence in the case, including the circumstantial evidence, should be considered by you in arriving at your verdict.

Record in 92–3915 Doc. 15; Record in 92–3917/92–4001 Doc. 12.

Boykins, Banks, and Williams fear that the instruction as given permitted the jury to assume the existence of inculpating circumstances and draw legal conclusions based on those assumptions. This argument ignores the specific jury instruction (# 11) which required the government to prove "the guilt of each defendant, separately considered, beyond a reasonable doubt...." Similarly, Jury Instruction # 6 informed the jury to "draw such reasonable inferences as you believe to be justified from the *proven facts*." Record in 92–3915 Doc. 15; Record in 92–3917/92–4001 Doc. 12 (emphasis added). Viewed as a whole, the jury charge was not misleading. The instructions made it clear that the facts supporting the conviction could not be presumed but had to be proven beyond a reasonable doubt.

### 3. Self-incrimination

Williams exercised his right not to testify at trial. Accordingly, the trial court issued the following instruction pertaining to Williams's silence.

The law does not compel a defendant in a criminal case to take the witness stand and testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not testify. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

---

1. For example, Jury Instruction # 4 informs the jury, "You are the sole and exclusive judges of the facts." Jury Instruction # 6 advises the jury, "You are to consider only the evidence received in this case. You should consider this evidence in light of your own observations and experiences in life. You may draw such reasonable

inferences as you believe to be justified from the proven facts." Finally, Jury Instruction # 9 concludes, "In weighing the effect of discrepancy [in evidence], always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood."

Record in 92–3915 Doc. 15; Record in 92–3917/92–4001 Doc. 12.

■ Williams objected to this instruction at trial and on appeal he argues that the instruction was deficient because it failed to caution the jury against discussing Williams's silence. Williams is concerned that in its deliberations, the jury may have felt free to consider his silence in determining his guilt. Yet the instruction above unequivocally forbids the jury from drawing an "inference of any kind" from Williams's silence. Clearly, such a prohibition prevents Williams's silence from being used against him. Because the instruction meets the concerns advanced by Williams and was not misleading in any way, we find the instruction was proper.

### 4. Constructive Possession

■ Boykins, Banks, and Williams claim that Jury Instruction # 22 was an erroneous statement of the law because it failed to inform the jury that intent is an essential element of constructive possession. The instruction reads:

> Possession may be actual or constructive. Constructive possession is the ability to control cocaine base.

Record in 92–3915 Doc. 15; Record in 92–3917/92–4001 Doc. 12.

Though correct in asserting that intent is in fact an element of the charged crime, Boykins, Banks, and Williams fail to read the jury charge as a whole. Throughout the instructions, the jury is informed that they must find intent in order to convict.

Jury Instructions # 20 and 21 discuss the elements of Count I of the indictment. Both emphasize that to be convicted, possession of the substance must be found to be knowing or intentional. Jury Instruction # 23, in refining the definition of constructive possession specifically states: "A person who ... knowingly has both the power and the intention ... to exercise dominion or control over a thing ... is in constructive possession of it." *Id.*

The instructions properly informed the jury that to exercise constructive possession, the defendants had to have the ability and intent to control the narcotics. There was no danger that the jury would be misled into requiring anything less.

### 5. Aiding and Abetting

The trial court's Jury Instruction # 32 reads in relevant part:

> Any person who knowingly aids, abets, counsels, commands, induces, or procures the commission of a crime is guilty of that crime. However, a person must knowingly associate himself with the criminal venture, participate in it and try to make it succeed.

Record in 92–3915 Doc. 15; Record in 92–3917/92–4001 Doc. 12. Jury Instruction # 34 reads:

> Presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish a defendant's guilt.

*Id.*

Boykins, Banks, and Williams objected to these instructions and submitted a replacement which explicitly stated that the defendant must have had some interest in the criminal venture to establish aiding and abetting. The trial court overruled the objection and refused to tender the submitted instruction.

■ On appeal, Boykins, Banks, and Williams contend that both instructions are lacking for the same reason: they fail to inform the jury of precisely what level of cooperation is necessary before one can be implicated in the criminal activities of others. In support of their argument, appellants cite *Nye and Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). Yet it is difficult to see how *Nye and Nissen* calls for a different jury instruction than the one given in this case. There, the Court required as a prerequisite for aiding and abetting, a finding that the defendant, "associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Nye and Nissen*, 336 U.S. at 619, 69 S.Ct. at 770 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d. Cir.1938)). Jury Instruction # 32 parallels the language of *Nye and Nissen* and together with Jury Instruction # 34 gives the jury proper guid-

ance as to what is and what is not sufficient for a finding of culpability.

### D. Sentencing

Williams contends that the trial judge made certain errors in determining the quantity of drugs involved in this case which led the court below to impose an overly lengthy sentence. In particular, Williams argues that the trial judge's sentence was clearly erroneous because it was (1) based on the erroneous belief that the jury had made a finding as to the quantity of drugs possessed by Williams, and (2) based on an erroneous recollection of the evidence presented at trial.

 In cases involving the illegal possession of narcotics, the quantity of drugs attributed to a defendant is not limited to the amount which the defendant personally possesses. Instead, we have held that where criminal activity is undertaken with others, the defendant will be held accountable for all criminal activity reasonably foreseeable to the defendant. *United States v. Ross,* 905 F.2d 1050, 1054 (7th Cir.), *cert. denied,* 498 U.S. 863, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990).

 The quantity of drugs involved in a narcotics case is not a substantive element of the offense. Rather it is a factor which goes into calculating the severity of punishment and may rest on a finding that only meets the preponderance of the evidence standard. *United States v. Schuster,* 948 F.2d 313, 315 (7th Cir.1991). Since "punishment is within the province of the court," *United States v. Trujillo,* 959 F.2d 1377, 1383–84 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992), the trial court's findings of fact are given great deference and can only be disturbed upon a showing of clear error. 18 U.S.C. § 3742(d).

 Williams's first argument is easily disposed of. It is based on the following statement made by the trial judge at the sentencing hearing.

And so I find [base offense level] 26 is appropriate because the factual basis for that 26 is proven. I find by a preponderance of the evidence and there is no ques-

tion that the jury found beyond a reasonable doubt at least five grams, and so I find the 26 base offense level to be appropriate.

Tr. IV, 13–14. Williams claims that the trial court based its decision on the erroneous belief that the jury had made a determination as to the quantity of drugs possessed by Williams.

When looking at the transcript of the sentencing hearing as a whole, however, it becomes evident that the trial judge's finding was properly independent of any jury determination. Not only did the trial judge state affirmatively in the quoted portion above that he found by a preponderance of the evidence that Williams possessed more than five grams of cocaine, but earlier in the hearing he specifically stated,

I think the Court's responsibility is to find by a preponderance of the evidence the amount this man possessed in terms of gram amounts. I don't think I'm supposed to guess what the jury thought. I think I'm supposed to make that finding based on the evidence I hear here today and the evidence from that.

Tr. IV, 11. In light of this, the trial judge's comment about what the jury found is of little significance. The trial court rested its decision on the evidence presented during the sentencing hearing and not on any speculation as to what the jury believed.

 Williams also argues that the trial court's finding that he was in possession of more than five grams was premised on a misunderstanding of the facts. To have had more than five grams, Williams would had to have been found in constructive possession of the cocaine discarded by Wayne Davis because as Williams points out, even if he were held accountable for the cocaine found on his person and the cocaine under his seat, those two quantities together would still weigh less than five grams. According to Williams, the trial judge's finding was based on the mistaken belief that Williams was found with more than five grams on his person.

The trial judge specifically found by a preponderance of the evidence that Williams was in possession of more than five grams. Fur-

dd

thermore, this determination was made after Williams ably clarified any potential confusion as to the evidence in the case. Since amounts between five and twenty grams fall within the same base offense level, the trial judge saw no need to specify the amount found. Though he may have failed to articulate his findings more precisely, his determination was not clearly erroneous. The decision rests on a perfectly reasonable finding that Williams was in constructive possession of the cocaine discarded by Davis.

### E. Severance of Defendants

Prior to trial, Boykins filed a motion for severance of defendants and counts, requesting that he be tried separately. The trial court denied the motion and Boykins appeals.

Severance of defendants is governed by Rule 14 of the Federal Rules of Criminal Procedure which gives the trial court discretion to require separate trials if it appears that any of the litigants will be prejudiced by joinder. Fed.R.Crim.P. 14.[2] Boykins argues that although joinder is normally appropriate when multiple defendants are indicted together, the facts of this particular case demanded that the trial court grant his motion to sever under Rule 14.

 We may reverse a denied Rule 14 motion only if the court below abused its discretion or committed plain error affecting substantive rights. *United States v. Raineri*, 670 F.2d 702, 709 (7th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *United States v. Kopel*, 552 F.2d 1265 (7th Cir.), *cert. denied*, 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977). To meet this burden, Boykins must show that the denial of the motion resulted in actual prejudice at trial. Actual prejudice requires more than simply showing that a separate trial offered the defendant a better chance for acquittal. To succeed, a defendant must show that without a severance, he or she was unable to obtain a fair trial. *United States v. Lopez*, 6 F.3d 1281, 1285 (7th Cir.1993). Boykins alleges the existence of two types of actual

prejudice: (1) prejudice arising from the spillover effect of the guns and drugs admitted into evidence and (2) prejudice arising from the inability of Boykins's codefendant Williams to present evidence exculpating Boykins.

Boykins first contends that because he was tried with Banks and Williams, the jury based his conviction on evidence which truly inculpated only Banks and Williams. Essentially, Boykins claims that the jury found him guilty by association. To prevail on this claim, Boykins must overcome two presumptions: (1) that the jury will capably sort through the evidence and (2) that the jury will follow instructions on considering each defendant separately. *Lopez*, 6 F.3d at 1286.

 Boykins has not rebutted either presumption. The instructions given the jury in this case repeatedly emphasized that the jury was to consider the guilt of each defendant separately and Boykins fails to demonstrate why the jury would be unable to follow this direction. Furthermore, as we have discussed, the evidence against Boykins was sufficient to support his conviction. Thus, to the extent that Boykins's claim of prejudice rests on the notion that his conviction was supported only by his codefendants' evidence, it is without merit.

Boykins offers an alternative basis for actual prejudice. He alleges that because he and Williams were tried together, Williams's invocation of his Fifth Amendment right not to testify at trial prevented the jury from hearing Williams offer evidence exculpating Boykins. Boykins claims that were he tried separately, Williams would have been able to testify on his behalf.

When a defendant requests a severance so that he can take advantage of exculpatory testimony from a co-defendant, the trial court should consider whether: (1) the codefendant's testimony would be exculpatory; (2) the co-defendant would in fact testify; (3) the testimony would bear on the defendant's case. *Lopez*, 6 F.3d at 1285; *United States*

---

**2.** Rule 14 reads in relevant part as follows:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information

or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

**1290**

*v. Studley,* 892 F.2d 518 (7th Cir.1989) (quoting *United States v. Melton,* 689 F.2d 679, 686 (7th Cir.1982)). Before a severance can be granted, Boykins must offer some independent support that Williams would indeed offer exculpatory testimony. *Studley,* 892 F.2d at 525. Boykins fails to present anything that would lead us to believe that Williams would in fact testify and that, if he did testify, Williams's testimony would be exculpatory. Absent such evidence we must agree with the trial court's decision.

Boykins has been unable to demonstrate that his conviction was based solely on spillover evidence nor has he proven that had he been tried separately, Williams would have offered testimony which tended to exonerate him. Because there is no evidence that the joinder of the three defendants in this case resulted in actual prejudice to Boykins, the trial court's denial of his Rule 14 motion is affirmed.

### III.

Boykins, Banks and Williams have failed to demonstrate that the decision by the trial court should be disturbed. The convictions and sentences of all three defendants are therefore

AFFIRMED.