**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick MENTING and Dennis Tushoski,**
**Defendants–Appellants.**

**Nos. 97–2661, 97–2662.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1998.

Decided Feb. 3, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 25, 1999.

John W. Vaudreuil (argued), Peggy A. Lautenschlager, Office of the U.S. Attorney, Madison, WI, for U.S.

Stephen J. Meyer, Madison, WI, for Patrick Menting.

Bruce J. Rosen, Susan C. Blesener (argued), Pellino, Rosen, Mowris & Kirkhuff, Madison, WI, for Dennis Tushoski.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Like many others before them, Patrick Menting and Dennis Tushoski were charged with, and convicted of, conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Both men now claim that their convictions are infirm because the district court did not instruct the jury properly. In addition, Menting asserts that his conviction was unsupported by the evidence, and Tushoski believes that the district court should not have enhanced his sentence for obstruction of justice. Finding no errors with the district court's judgment, we affirm.

# I

Menting and Tushoski conducted their cocaine business in the Eagle River, Wisconsin area between 1988 and 1996. Their supplier was one Stephen Pszeniczka, who for eight years made nearly weekly trips from Eagle River to Milwaukee to purchase cocaine. Pszeniczka typically returned with approximately one ounce of uncut cocaine.

Although the individual quantities were small, Pszeniczka was as regular as clockwork. Over time, his operation cumulatively involved a significant amount of cocaine and a dozen or so participants, including Menting and Tushoski. At trial, Pszeniczka reported that after each drugbuying trip to Milwaukee, he distributed approximately three-fourths of his one ounce to three pre-designated customers. One of these customers was Tushoski, the owner of a local auto body shop.

Pszeniczka explained that between 1991 and 1996 he sold Tushoski uncut cocaine in amounts ranging from one-sixteenth of an ounce to one-half of an ounce per sale. Often, these transactions occurred at Tushoski's auto body shop. This was convenient for Tushoski in two important ways: first, it facilitated his purchases from Pszeniczka, because the latter would stop at the auto body shop on his way back from Milwaukee, use the shop's paint scale to weigh out the orders, and complete the sales; and second, the two had ready customers in Tushoski's employees, who placed their orders for Pszeniczka with Tushoski. Sometimes Pszeniczka would simply pre-package the cocaine according to Tushoski's specifications and deliver the cocaine to the shop.

After Pszeniczka made the sales of unadulterated cocaine to his three pre-determined customers, he mixed the remaining cocaine with inositol and sold it, often pre-packaged for individual sale. Between 1991 and 1994, one of his regular customers was Menting, who bought in amounts varying from a quarter of a gram to one-eighth of an ounce. Unlike Tushoski, Menting did not have a standing order with Pszeniczka. Instead, from time to time Menting would call Pszeniczka from a bar Menting frequented and place orders for himself and other patrons. Pszeniczka would then deliver the requested amounts to Menting at the bar, or Menting would go to Pszeniczka's home, where Pszeniczka would weigh and individually wrap the cocaine to Menting's specifications. Usually Menting paid at the time of purchase, but sometimes Pszeniczka fronted Menting drugs for payment at a later date. Menting rarely bought during the week, but he often placed between six and eight orders in the course of a weekend. Pszeniczka testified that he never directed Menting to sell to any particular individual nor did he ask Menting to collect money on his behalf; as far as Pszeniczka was concerned, once Menting purchased the drugs, Pszeniczka was uninterested in what Menting did with them. Further, Pszeniczka said that while he often asked other people to accompany him to Milwaukee or to store his drugs, he never made such requests of Menting, whom Pszeniczka did not consider particularly reliable.

These activities ultimately came to the attention of law enforcement officials, who arrested Pszeniczka, Menting, Tushoski, and a handful of others and charged them with conspiring to distribute cocaine in violation of 21 U.S.C. § 846. (Pszeniczka was also charged with a variety of other crimes that are not at issue in this case.) Most of those charged pleaded guilty and testified, including Pszeniczka. Menting and Tushoski, however, chose to go to trial and were convicted by a jury. At sentencing, the district court found that both Menting and Tushoski had perjured themselves while testifying and therefore assessed a two-point upward adjustment to their base offense levels for obstruction of justice under U.S.S.G. § 3C1.1. Menting's conduct earned him a sentence of 108 months in prison, while Tushoski received a sentence of 94 months. Menting appeals both his conviction and sentence, and Tushoski challenges only the conviction.

## II

■ The common issue in this appeal concerns the adequacy of the district court's instructions on the distinction between a conspiracy and a mere buyer-seller arrangement. In addition, Tushoski objects to the court's instructions concerning multiple conspiracies, membership in a conspiracy, and his theory of defense. The district court did not overlook any of these subjects in its instructions. Our task therefore is to look at the charge as a whole and determine "whether the jury was misled in any way and whether it had a proper understanding of the issues and its duty to determine those issues." *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993). Instructions which are accurate statements of the law and which are supported by the record will not be disturbed on appeal. *Id.* This is not a case in which an entire theory of defense has arguably been omitted, and we therefore find cases such as *United States v. Buchannan*, 115 F.3d 445, 449 (7th Cir.1997), which address that situation, to be unhelpful.

■ At trial, both defendants conceded that they were guilty of repeatedly purchasing cocaine from Pszeniczka. In accordance

with well-established law, they therefore argued that the relationship they had with Pszeniczka was simply that of buyer and seller for each discrete purchase, and that the sales were not made pursuant to an agreement to distribute. See, e.g., *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir.1993) (*en banc*); *United States v. Mims*, 92 F.3d 461, 463 (7th Cir.1996). Each one proposed a buyer-seller instruction to support this theory of defense, and, from a certain point of view, each was successful. The trial court agreed that they were entitled to a buyer-seller instruction, but it rejected the specific language they had suggested (which it deemed "confusing") in favor of the following instruction:

> The existence of a mere buyer-seller relationship between a defendant and a conspirator, without more, is not sufficient to establish a defendant's guilt. The government must prove that a defendant knowingly and intentionally joined the charged conspiracy, knowing the conspiracy's aims and intending to achieve them.[1]

The defendants complain that this instruction did not give the jury sufficient guidance on how to distinguish a member of a conspiracy from a mere buyer from the conspiracy. We disagree. While on the brief side, the court's instruction did not misstate the law, nor did it mislead the jury. See, for example, *United States v. Turner*, 93 F.3d 276, 285 (7th Cir.1996) (approving a nearly identical instruction). Instead, it properly reminded the jury of the defendants' defense: that Menting and Tushoski were mere buyers and, as such, could not be guilty of participation in a conspiracy to distribute cocaine. Had the defendants so requested, the district court should have added, along the lines of the *Lechuga* decision, that in order to prove a conspiracy to distribute drugs "[w]hat is

necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself," 994 F.2d at 347. These defendants did not make such a request, however, and we cannot ask in hindsight that instructions always reach the ideal. Taken as a whole, they must simply convey to the jury a proper understanding of the legal issues they must decide. These instructions met that standard.

■ We take this occasion to comment again that the government could avoid many of these problems simply by charging the defendants with the substantive crime of distribution, 21 U.S.C. § 841(a)(1), instead of conspiracy. See, e.g., *United States v. Thomas*, 150 F.3d 743, 744–45 (7th Cir.1998). Here, the testimony of Pszeniczka and others gave the government an open-and-shut case that Menting and Tushoski purchased drugs for resale as well as for their own consumption. Given the approach of the Sentencing Guidelines, the switch in theory would not have affected the sentence the government was able to seek. See U.S.S.G. § 1B1.3(a)(1)(B); see also *Thomas*, 150 F.3d at 745. Charging distribution would also not have affected the prosecution's introduction of evidence at trial, because the invocation of the co-conspirator exception to the hearsay rule does not depend on an indictment for conspiracy. *Thomas*, 150 F.3d at 745; *United States v. Duff*, 76 F.3d 122, 124 (7th Cir.1996).

■ Tushoski individually also objects to the district court's rejection of his proposed jury instructions on "Multiple Conspiracies," "Membership in the Conspiracy," and "Theory of Defense." This argument does not warrant extensive discussion. Once again, the district court instructed the jury on each of these three topics. Because the court's instructions were both correct statements of

---

1. Menting, for example, wanted the following instruction, which strikes us as not only "confusing" but affirmatively wrong in places as a matter of law: "Merely purchasing cocaine from a conspiracy, standing alone, can never establish a membership in the conspiracy. A sale of cocaine, by definition, requires two participants; their combination for that purpose does not show that they have agreed to do anything other than complete the transaction. Insofar as there is an agreement between the conspirators merely on the one side to sell and on the other to buy, there is no conspiracy between them no matter what the buyer intended to do with the drugs after he bought them. The crime of conspiracy focuses on agreements. The government must prove that the accused Patrick Menting knew of the agreement alleged in the indictment and intentionally joined in it." We note, tautologically, that it can literally never be error for a district court to refuse to give a legally incorrect instruction.

the law and supported by the record, they should not be disturbed on appeal. See *Boykins*, 9 F.3d at 1285. The question is not whether Tushoski's proposed instructions were in some technical sense legally accurate, which the district court was willing to believe. Exercising its discretion, the court rejected his proposals because they were argumentative and likely to confuse the jury. As long as the instructions actually given were accurate, Tushoski has nothing to complain about.

## III

■■■ Next, Menting argues that the evidence against him is insufficient to support a conspiracy conviction. Before we address the substance of his claim, we pause to discuss the government's improper reliance on the defendants' presentence reports ("PSR") in its brief to this court to support its statement of facts. In reviewing a defendant's challenge to the sufficiency of the evidence on appeal, we ask whether a reasonable fact finder, based upon the evidence *presented to it*, could have found guilt beyond a reasonable doubt. *United States v. Taylor*, 116 F.3d 269, 271 (7th Cir.1997). Accordingly, we do not consider anything that the jury itself did not consider, including a PSR, which may contain hearsay or other information inadmissible at trial.

By citing to information not in the trial record, the government's brief violates Federal Rule of Appellate Procedure 28, which requires that a party's statement of relevant facts include "appropriate" record citations. Fed. R.App. P. 28(a)(4), (b). We require such record citations to relieve this court of the burden of scouring the record for support for a litigant's claims. In deciding this appeal, we ignored—as we must—the government's citations to the PSRs and relied only on the trial transcript. Because the government failed to cite to portions of the record suitable for our consideration, we were forced to undertake an extensive search of the record, a burden we should not have had to shoulder.

■■■ Moving on to the merits of Menting's appeal, we note once again that a sufficiency of the evidence challenge is hard to win, given the standard of appellate review. We consider the evidence in the light most favorable to the government, and we must affirm the conviction so long as any rational factfinder could have found the essential elements of the offense to have been established beyond a reasonable doubt. *Taylor*, 116 F.3d at 271. We will overturn the verdict "only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Granados*, 142 F.3d 1016, 1019 (7th Cir.1998).

■■■ This is not such a record. As we have already noted, to sustain a conspiracy conviction the government·had to prove an agreement to achieve a criminal objective beyond the agreement to purchase cocaine. *Lechuga*, 994 F.2d at 347. Menting argues that there was no evidence of a forbidden agreement—just individual purchases and sales. But the jury was entitled to view these discrete transactions in their broader context. More than 55 years ago, the Supreme Court upheld a conspiracy conviction in which the overt acts consisted solely of "sales, which but for their volume, frequency and prolonged repetition, coupled with the seller's unlawful intent to further the buyer's project, would be wholly lawful transactions." *Direct Sales Co. v. United States*, 319 U.S. 703, 714–15, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). Following that guidance, this court has looked for evidence of "a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture" in order to distinguish a conspiracy from a simple buyer-seller relationship. *United States v. Pearson*, 113 F.3d 758, 761 (7th Cir.1997) (citation omitted). Other important indicia of conspiracy include "the length of affiliation, the established method of payment . . . the extent to which the transactions are standardized, and the demonstrated level of mutual trust." *Id.*

Here, there is no doubt that a rational trier of fact could have found that the government established the essential elements of conspiracy beyond a reasonable doubt. The government presented evidence that for sev-

eral years Menting regularly and frequently purchased cocaine from Pszeniczka; that Menting and Pszeniczka established a routine whereby Menting telephoned orders for his fellow bar patrons and Pszeniczka either delivered the requested drugs to the bar or had Menting pick them up at Pszeniczka's home; that on Menting's request, Pszeniczka prepackaged the drugs for individual consumption; that Pszeniczka knew Menting was purchasing for resale; and that Pszeniczka occasionally sold Menting drugs on credit. All of this evidence points toward the conclusion reached by the jury, that Menting and Pszeniczka conspired together to distribute cocaine.

For its part, the defense relies on evidence that Pszeniczka did not believe Menting was reliable and that Menting accordingly played a relatively insignificant role in Pszeniczka's operations. This evidence cannot rescue Menting; at the very most, it suggests that another rational jury might have seen the case more favorably to him. As *Pearson* explains, the absence of one factor—here, mutual trust—does not preclude us from affirming a jury verdict when other factors point to a conspiracy. *Pearson*, 113 F.3d at 761. Moreover, the fact that Menting played a lesser role than other participants does not relieve him from liability: a conspiracy may include both big fish and small fry, so long as there is a continuous, mutually profitable relationship. Based upon the evidence presented, a reasonable jury could have found that Menting and Pszeniczka shared such a relationship.

## IV

■ Finally, Tushoski argues that the district court erred when it found that he perjured himself at trial and therefore deserved a two-level increase in the base offense level for obstruction of justice under Sentencing Guideline § 3C1.1. We review the district court's factual findings with respect to the obstruction of justice enhancement for clear error. *United States v. Godinez*, 110 F.3d 448, 456 (7th Cir.1997).

■ The guideline authorizes a two-point enhancement for obstruction of justice if the sentencing court finds by a preponder-

ance of the evidence that the defendant "willfully impeded or obstructed . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. This enhancement applies when a defendant provides false testimony at his own trial "concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). When a defendant objects to an enhancement for obstruction, the district court must review the evidence and make an independent determination as to the existence of willful obstruction of justice. *Id.* at 95, 113 S.Ct. 1111.

■ Here, the district court independently determined that Tushoski committed perjury. It found that Tushoski had lied, noting that his testimony was directly contradicted by three witnesses the court found credible. The court concluded that Tushoski's attempt to obstruct justice was willful in that "the testimony of defendant Tushoski was carefully orchestrated to address only evidence which he knew the jury could not disregard." We see no clear error in these determinations, which dooms Tushoski's challenge to the obstruction of justice enhancement.

Tushoski attempts to muddy the waters by arguing that the "two-witness rule" of the federal criminal perjury statute, 18 U.S.C. § 1621, applies here. To prove that a defendant gave false testimony in violation of 18 U.S.C. § 1621, the government faces a heightened evidentiary standard: the government must provide either the testimony of two witnesses, or the testimony of one witness and "sufficient corroborative evidence." *United States v. Chaplin*, 25 F.3d 1373, 1377 (7th Cir.1994). Whether the two-witness rule applies to sentencing appears to be an issue of first impression in this circuit, but it is one that is readily resolved.

■ It is well established that the Federal Rules of Evidence do not apply at sentencing and that the sentencing court is free to consider a wide range of information, including hearsay evidence, that may have been inadmissible at trial. *United States v. Beler*,

20 F.3d 1428, 1432 (7th Cir.1994). The use of these relaxed rules is, however, subject to the qualification that a defendant's sentence must be based upon "reliable information." *Id.* Here, the district court based its enhancement of Tushoski's sentence on the testimony of three credible witnesses. These indicia of reliability are more than enough to support the district court's choice of a sentencing level, after the defendant has been found guilty beyond a reasonable doubt at trial. Compare *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (sentencing court may consider conduct of defendants underlying charges on which they had been acquitted). It is also noteworthy that no court that we can find has ever applied the two-witness rule to sentencing, and the Second Circuit has explicitly held that the rule does not apply to the obstruction of justice enhancement. See *United States v. Onumonu*, 999 F.2d 43 (2d Cir.1993).

For the reasons stated, we AFFIRM both defendants' convictions and Tushoski's sentence.