UNITED STATES of America,
Plaintiff–Appellee,

v.

William "Bill" EDWARDS, Reginald "Reggie" Fitzgerald, Michael Schmiz, and Arnold "Sonny" Madden, Defendants–Appellants.

Nos. 93–3353, 93–3424, 93–3440 and 93–3457.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1994.

Decided Sept. 23, 1994.

Michael Jude Quinley (argued), Office of the U.S. Attorney, Criminal Div., Fairview Heights, IL, Scott Charles Collins, Office of the U.S. Attorney, Chicago, IL, for U.S. in No. 93–3353.

Daniel P. Reardon, Jr. (argued), Casey & Meyerkord, St. Louis, MO, for William "Bill" Edwards in No. 93–3353.

Michael Jude Quinley (argued), Office of the U.S. Attorney, Criminal Div., Fairview Heights, IL, for U.S. in Nos. 93–3424, 93–3440 and 93–3457.

Burton H. Shostak (argued), Deborah J. Westling, Moline & Shostak, Clayton, MO, for Reginald Fitzgerald in No. 93–3424.

Terence Niehoff (argued), St. Louis, MO, for Michael Schmiz in No. 93–3440.

Eric W. Butts (argued), St. Louis, MO, for Arnold "Sonny" Madden in No. 93–3457.

Before ENGEL,* BAUER, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Sonny Madden, Bill Edwards, Reggie Fitzgerald, and Michael Schmiz were each convicted of conspiring to distribute cocaine and of using firearms in connection with a narcotics trafficking offense. Madden, Edwards, and Fitzgerald were also convicted for their attempts to impede the federal investigation of their activities. They each appeal their convictions, and Fitzgerald appeals his sentence. We find no basis for disturbing the decision of the trial court, and therefore, we affirm, in all respects, all the convictions as well as Fitzgerald's sentence.

---

* The Honorable Albert J. Engel, United States Circuit Judge for the Sixth Circuit, is sitting by designation.

## I.

From 1987 until 1990, Sonny Madden, Bill Edwards, Reggie Fitzgerald, and Michael Schmiz were involved in an elaborate and sizable cocaine purchase and distribution scheme. Working primarily out of Bill's Continental Club ("the Club") in Centreville, Illinois, a bar owned by Edwards, the four defendants, along with others not party to this appeal, obtained cocaine from various suppliers and then resold it to users and other dealers for redistribution.

The evidence at trial established the following series of activities. Edwards, Fitzgerald, Sonny Madden, and Madden's brother, David, would frequently meet at the Club or at Sonny Madden's apartment in nearby Cahokia, Illinois, and pool their money to buy as much as $5,000 worth of cocaine. They would then bring the cocaine back to the Club, mix it with a food supplement, and package it in smaller amounts for redistribution. The defendants purchased cocaine in this way on several occasions from at least three different suppliers and had credit arrangements with two of those suppliers. Sonny Madden and Edwards would then sell the cocaine themselves out of a back room at the Club or through the Club's bartenders, of which Michael Schmiz was one. Some of their customers such as the female dancers from Dottie's Body Shop, obtained cocaine for personal use. It appears that a more substantial share of cocaine, however, was sold on a regular basis to various street dealers who would in turn resell the cocaine to others. Many of these street dealers bought cocaine from the defendants on credit.

One of these street dealers was Marvin Butler. In January of 1988, Butler was arrested for selling cocaine to undercover agents working with the Drug Enforcement Agency ("DEA"). His partner, Steve Leible escaped but was later arrested. Butler and Leible agreed to cooperate with the DEA and were released soon after their arrests. Suspicious about Butler's quick release, Sonny Madden and Bill Edwards threatened to kill Butler if they discovered he was informing the police about them. Butler consistently denied their accusations.

On July 9, 1988, Marvin Butler was shot in the head three times from close range and left to die on a park bench just outside Bill's Continental Club. One witness present in the Club said he saw Sonny Madden and Edwards walk in the bar soon after hearing the shots. Madden said, "[t]hose people deserved what they got."

Tammy Jo Uselton, Sonny Madden's girlfriend, testified that Edwards took a gun from Madden and said he was going to throw it in the river. Uselton also told the jury that Madden told her that because Butler was still gurgling after he shot him the first time, Madden had to shoot him again. David Madden testified that Edwards and Sonny Madden had both admitted to shooting Butler to prevent him from busting up their drug operation.

A witness named Keith King testified that he was threatened by Reggie Fitzgerald during the course of this investigation. King's father was the mayor of Cahokia and was, therefore, responsible for appointing the Chief of Police. Fitzgerald's threats were made in an attempt to get King to use his influence to get Sergeant Gary Brewer, a local policeman working with federal authorities, off of the case.

Sonny Madden, Edwards, Fitzgerald, and Schmiz were indicted on one count of conspiring to distribute and possess with the intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and one count of using and carrying firearms during and in relation to a narcotics transaction. 18 U.S.C. § 924(c). In connection with the murder of Butler, the grand jury indicted Madden and Edwards for the murder of a person for purposes of preventing the communication of knowledge of a commission of a federal offense, 18 U.S.C. § 1512(a)(1)(C), and for using a firearm during and in relation to a crime of violence. 18 U.S.C. § 924(c). Fitzgerald was indicted individually on one count of obstruction of justice. 18 U.S.C. § 1503. A jury convicted all defendants on all charges brought against them.

## II.

Madden, Fitzgerald, Edwards, and Schmiz each challenge several aspects of their vari-

ous convictions. Fitzgerald also contests his sentence. We consider their arguments serially.

### A. Sufficiency of the Evidence

■ The defendants argue here that their various convictions should be reversed because they were based on evidence which as a matter of law failed to satisfy the burden of proof beyond a reasonable doubt. Our task, in evaluating such a claim, is to determine whether after reviewing the evidence in a light most favorable to the government and drawing all reasonable inferences in favor of the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Williams,* 31 F.3d 522, 525 (7th Cir.1994). We will not, in conducting our review, reweigh the credibility of evidence. *United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993).

■ *1. Conspiracy to Distribute Cocaine.* The defendants first challenge the sufficiency of the evidence supporting their convictions for conspiracy to distribute cocaine. A conspiracy to distribute drugs is an agreement by two or more persons to distribute drugs. *United States v. Sergio,* 934 F.2d 875, 878 (7th Cir.1991). Evidence of an agreement and the defendant's connection to the agreement must be substantial, *United States v. Durrive,* 902 F.2d 1221, 1228 (7th Cir.1990), but because of the inherently secretive nature of a criminal conspiracy, a conviction may rest on circumstantial evidence. *Id.* at 1225. For instance, a pattern of frequent and repeated transactions which is suggestive of an enduring cooperative relationship can support a conspiracy conviction. *United States v. Dortch,* 5 F.3d 1056, 1065 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). Similarly, evidence of transactions done on a consignment or credit basis may also give rise to an inference of guilt. *Precin v. United States,* 23 F.3d 1215, 1218 (7th Cir.1994). Such relationships indicate a level of cooperation and trust not typically found absent some type of agreement. Moreover, the existence of a credit arrangement indicates that the seller has an interest in the activities of the buyer.

The record is replete with testimony establishing each of the defendants' involvement in an elaborate cocaine distribution operation. Cocaine dealers testified that Madden and Edwards frequently sold them drugs at Bill's Continental Club either directly or through Schmiz. These dealers acknowledged having credit arrangements with Madden and Edwards. Madden, Edwards, and Schmiz kept an account of how much money each dealer owed for cocaine sold at the Club. Madden promoted his business by telling dealers that he and Edwards had bribed the local police officers so that they would not interfere with dealings at the Club.

The record also reveals that Madden and Edwards had enduring credit arrangements with several suppliers. Sonny Madden's brother, David, testified that Sonny owed as much as $15,000 to one of his suppliers. One witness testified that she saw Sonny and David Madden, Edwards, and Fitzgerald pool their money to purchase large quantities of cocaine and then divide up the purchase into smaller portions for redistribution. Fitzgerald's contention that he purchased cocaine for personal use only and that he was not part of the conspiracy is contradicted directly by this evidence which supports the inference that he actively endeavored to further the aims of the conspiracy.

The law in this circuit supports a finding of guilt based on the foregoing evidence. The testimonies of Madden's and Edwards's drug dealing colleagues as well as the testimonies of their more casual friends consistently describe an elaborate and profitable cocaine purchasing and distribution network based in the Club and later in Madden's apartment with Madden and Edwards in charge. Though not as prominent in the planning and management of the scheme, Fitzgerald and Schmiz played significant roles in furthering the scheme.

Schmiz does not contest this, but instead argues that the evidence at trial demonstrated the existence of several smaller conspiracies, one of which consisted of his agreement with Madden and Edwards, rather than one single conspiracy as was charged in the in-

dictment. He concludes that this variance between the indictment and the evidence prejudiced his case because it enabled the jury to convict him based on the acts of persons not party to his conspiracy with Edwards and Madden.

The question of whether there was more than one conspiracy is an issue of fact, and the jury's verdict in this case represents a finding that the government presented sufficient evidence to prove the charges of a single conspiracy beyond a reasonable doubt. *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991). In light of this, a claim of variance is treated as a claim of insufficiency of the evidence. *United States v. Donovan*, 24 F.3d 908, 914 (7th Cir.1994).

The finding of a single conspiracy is not rebutted by the fact that Schmiz did not meet or know all the other members of the conspiracy. The government need only prove that Schmiz joined the agreement. *Townsend*, 924 F.2d at 1389. Evidence that Madden and Edwards organized all transactions from a centralized base of operation was a good indication that there was one overarching conspiracy. That Schmiz was part of the whole agreement is evidenced by his role in distributing drugs at the Club and by his job in keeping a ledger on credit sales. Schmiz's conviction of the conspiracy count was, therefore, supported by the evidence.

■ *2. Use and Carrying of a Firearm.* Madden, Edwards, Fitzgerald, and Schmiz all join in the argument that even if the evidence supporting their conspiracy convictions was sufficient, there was a lack of evidence connecting the conspiracy to the use of firearms. We review this claim using the same standard as in the previous claim.

■ To secure a conviction under 18 U.S.C. § 924(c), the government need not prove that the weapon was actually used or brandished. Evidence that a firearm was in proximity and available for protection during the course of a narcotics offense is sufficient. *United States v. Carson*, 9 F.3d 576, 582 (7th Cir.1993). A conviction can also be sustained by evidence that the defendant participated in an exchange of firearms for narcotics. *Smith v. United States*, —— U.S. ——, ——,

113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). When the underlying drug offense is a conspiracy to distribute narcotics, firearm possession by one conspirator under § 924(c) can be attributed to other members of the conspiracy under the *Pinkerton* doctrine. *United States v. Williams*, 31 F.3d 522, 526 (7th Cir.1994).

In *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), the Supreme Court held that an act in furtherance of a conspiracy may be attributed to all coconspirators regardless of whether those conspirators participated in the act. If, however, the act is one which "could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement," the nonparticipating coconspirators cannot be held responsible. *Id.* at 648, 66 S.Ct. at 1184. We have held that the inherently violent nature of the drug trade makes the presence of firearms in large transactions reasonably foreseeable. *United States v. Gutierrez*, 978 F.2d 1463, 1468 (7th Cir.1992); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir.1988). Hence, in *Gutierrez*, it was permissible for the jury to attribute one conspirator's gun to another conspirator in a $60,000 cocaine transaction. Likewise in *Diaz*, which involved a $39,000 transaction, we upheld a conviction under 18 U.S.C. § 924(c), because we found it foreseeable that a weapon would be carried.

Testimony in this case established the presence of firearms during the course of several transactions. Bill Edwards kept several guns in his apartment above his club. On occasion, he also traded cocaine for guns or guns for cocaine. Sonny Madden carried a gun virtually everywhere he went, including drug transactions. David Madden and another participant, Terry Nelson also admitted to carrying a gun during various drug transactions.

The evidence clearly established a basis for Edwards's and Madden's convictions. Although there was no evidence that Fitzgerald and Schmiz had firearms on their persons, it was permissible for the jury to infer from their participation in a conspiracy, involving sizable amounts of cocaine purchases and sales (which as we have stated was supported

by the evidence), that firearms were used to protect the operation.

 *3. Witness Protection.* Madden and Edwards contend that their convictions stemming from the murder of Marvin Butler should be reversed. They submit that the evidence failed to show that Butler was a person protected by the statute, commonly referred to as the Witness Protection Act. 18 U.S.C. § 1512(a)(1)(C). That statute makes it a federal offense to kill or attempt to kill another person with the intent to:

> prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings.

*Id.*

At the time of his death, Butler was not assisting the government in any way. In fact, the evidence showed that the DEA had determined that Butler's cooperation was not worthwhile and were seeking to indict him. Madden and Edwards claim that based on this evidence, the court should have issued a directed verdict in their favor.

Madden and Edwards misunderstand the intention of the statute. Unlike the statute under which Fitzgerald was convicted, 18 U.S.C. § 1503, the presence of an investigation or judicial proceedings is immaterial as long as there is evidence that the defendant *believed* that a person might furnish information to federal officials and that he killed or attempted to kill that person in order to prevent such disclosure. *United States v. Leisure,* 844 F.2d 1347, 1364 (8th Cir.1988). It was reasonable to conclude from the testimonies provided by various persons that Madden and Edwards killed Butler because they feared he was informing the DEA about their operations.

 *4. Obstruction of Justice.* The final claim alleging that a conviction was unsupported by sufficient evidence is made by Fitzgerald. He was convicted on one count of obstructing justice for threatening Keith King in an attempt to get King to use his influence to impede the federal-state law enforcement investigation of this case. In a terse and unsupported statement, Fitzgerald asserts that his conduct does not rise to the level necessary to support his conviction. He adds that because he was already indicted at the time of the threats, there was nothing remaining with which to interfere.

This argument merits little discussion. It was perfectly reasonable for a jury to conclude that Fitzgerald's threats were made in an attempt to prevent Sergeant Brewer from conducting any further investigations or from testifying at trial. The fact that an indictment had already been delivered does not foreclose the possibility of further interference. Nor is it required that the attempted obstruction be successful. The government must only prove, as they did here, that the defendant knew of a pending judicial proceeding and that he attempted to impede its administration. *United States v. Guzzino,* 810 F.2d 687, 697 (7th Cir.1987).

## B. Jury Instructions

 The defendants' next set of challenges are directed to the trial court's instruction of the jury. Our task in reviewing the fitness of jury instructions is to look at the charge as a whole and to determine whether the jury was misled in any way and whether the jury had a proper understanding of its duties. *United States v. Boykins,* 9 F.3d 1278, 1285 (7th Cir.1993). Instructions which are accurate statements of the law and which are supported by the record will not be disturbed on appeal. *Id.*

 The refusal to give jury instructions which are submitted to the trial court is reviewed under a different standard. A defendant is entitled to an instruction on a theory of defense only if: (1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial. *Id.* If, viewing the jury charge as a whole, the defendant can satisfy these four criteria, the trial court's decision

not to give the instruction will provide grounds for reversal.

■ *1. Use and Carrying of a Firearm.* Madden, Schmiz, and Fitzgerald contend that the trial court's instruction on how the *Pinkerton* rule affects the charge of using and carrying a firearm in connection with a drug trafficking offense was erroneous.[1] They add that the court should have given, instead, the instruction submitted by the defendants.[2]

There is one significant difference between the instruction requested by the defendants and the instruction given. The defendants' instruction allows the jury to impute the use of a firearm to say, Fitzgerald, only if it finds first that Sonny Madden, Edwards, or Schmiz used a firearm. On the other hand, the instruction which was given imputes possession of a firearm carried by any of the coconspirators. This a more accurate state-

ment of law because under *Pinkerton*, a defendant is held responsible for the reasonably foreseeable acts of a coconspirator regardless of whether that coconspirator is charged or not. *Pinkerton*, 328 U.S. at 647, 66 S.Ct. at 1184. Moreover, the instruction was also more appropriate in light of the record which established that in addition to Sonny Madden and Edwards, David Madden and Terry Nelson also carried firearms while engaging in drug transactions.

Edwards, Fitzgerald, and Schmiz claim that the instruction given was deficient for two reasons. First, they submit that the instruction given did not advise the jury that they must find that the weapons were used in furtherance of the conspiracy. Second, they believe that the instruction was misleading because it failed to require the jury to find

---

1. Instruction No. 10 which was given by the court and which is based on the Seventh Circuit's Pattern Jury Instructions reads in relevant part:

> To sustain the charge of using or carrying a firearm during and in relation to a drug-trafficking crime from in or around 1987 through in or around 1990, as charged in Count 3 ..., the United States must prove the following propositions:
> First: that the defendant did knowingly use or carry a firearm; and
> Second: that he did so during and in relation to a drug-trafficking crime, that crime being conspiracy to distribute or possess with intent to distribute cocaine, as charged in Count 1.
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to a particular defendant, then you should find the defendant guilty.
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to a particular defendant, then you should find the defendant not guilty.
> As to Count 3, a conspirator is responsible for offenses committed by his fellow conspirators, if he was a member of the conspiracy when the offense was committed, and if the offense was committed in furtherance of, or as a natural consequence of the conspiracy.
> Therefore, if you find a particular defendant guilty of the conspiracy charged in Count 1 and if you find beyond a reasonable doubt that while that defendant was a member of the conspiracy, a fellow conspirator knowingly

and intentionally used or carried a firearm during and in relation to a drug trafficking crime as alleged in Count 3 in furtherance of, or as a natural consequence of that conspiracy, then you should find that defendant guilty of Count 3.

2. The instructions submitted by the defendants and refused by the court reads in relevant part:

> To sustain the charge in Count Three as to defendant (*Name of individual defendant here*), of using and carrying a firearm during and in relation to a drug trafficking crime, the government must prove the following propositions:
> First, the defendants (*Names of other three defendants here*) are guilty of the offense charged in Count Three of the indictment;
> Second, the defendants (*Names of other three defendants here*) committed the offense charged in count Three in furtherance of or as a natural and foreseeable consequence of the conspiracy charged in Count One of the indictment; and
> Third, defendant (*Name of individual defendant here*) was a member of the conspiracy at the time defendants (*Names of other three defendants here*) committed the offense charged in Count Three.
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant (*Name of individual defendant here*) guilty of Count Three of the indictment.
> If you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find defendant (*Name of individual*

that the guns were used while a particular defendant was a member of the conspiracy.

Both of these arguments rest on misreadings of the instructions. The instruction specifically explains to the jury that to convict a defendant of the firearm charge, they must find that either that defendant or a coconspirator used a firearm in furtherance of, or as a natural consequence of the conspiracy. It also makes clear that before convicting the defendant of the firearm charge, the jury must find that the defendant was a member of the conspiracy at the time the offense was committed. Because the instructions as given are a more accurate and complete statement of the law and also reflect a more accurate view of the record than the instruction requested by the defendant, the trial court committed no error in its charge of the jury.

**2. Theory of Defense Instructions.** At the conclusion of final arguments, Sonny Madden submitted a proposed instruction to the trial court and asked the court to give this instruction to the jury. The instruction was not a statement of law but rather a statement of Madden's position on each of the counts with which he was charged.[3] Recognizing the instruction as, in fact, argument, the trial court was correct in not giving it to the jury. The jury was instructed on each element of each count and was told that in order to convict, the government had to prove each element beyond a reasonable doubt. They also heard Madden's testimony denying each charge. Because the instruction was no more than a restatement of this testimony, the trial court's refusal to deliver the instruction was proper.

*defendant here*) not guilty of Count Three of the indictment.

3. Madden's requested instruction reads:

It is defendant Arnold "Sonny" Madden's contention that he did not agree to be a part of a common plan to distribute cocaine. It is further defendant Arnold "Sonny" Madden's contention that he did not agree to share the profits made or expenses incurred by anyone engaged in distributing cocaine.

As to Count II, it is the contention of defendant Arnold "Sonny" Madden that on July 9,

## C. Severance of Defendants

Fitzgerald and Schmiz requested that the trial court sever their trial from that of Madden and Edwards. They argued below, as they do on appeal, that the prejudice from being tried with two persons accused of murder would be insurmountable and that their convictions would likely be based on spillover evidence admitted against their codefendants. Finding no reason to believe that the jury would be unable to consider the evidence against each defendant individually, the trial court denied the motion. Fitzgerald and Schmiz appeal this decision.

We review the trial court's decision for an abuse of discretion. *United States v. Raineri,* 670 F.2d 702, 709 (7th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982). To succeed on their claim, Fitzgerald and Schmiz must show that the joint trial resulted in actual prejudice. "Actual prejudice means that the defendant could not have a fair trial without severance, 'not merely that a separate trial would offer him a better chance of acquittal'" *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988) (quoting *United States v. Papia,* 560 F.2d 827, 836 (7th Cir.1977)), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

The efficiencies achieved in trying members of the same conspiracy together has led to a preference in favor of a joint trial for coconspirators. *United States v. Lopez,* 6 F.3d 1281, 1285 (7th Cir.1993). To obtain a severance based on the dangers of spillover evidence, a defendant must show: (1) that the jury was not capable of sorting through the evidence, and (2) that the jury was not capable of following instructions in evaluating the evidence against each defendant separately. *Id.* at 1286.

1988 he did not kill or assist anyone in killing Marvin Butler in order to prevent Butler's communications to law enforcement officials.

It is further defendant Arnold "Sonny" Madden's contention as to Count III of the indictment that he did not knowingly use or carry any firearms during and in relation to the alleged conspiracy charge in Count 1.

As to Count IV of the indictment it is the contention of Arnold "Sonny" Madden that he did not use or assist anyone in the use of a .38 calibre firearm in the commission of a crime of violence.

Fitzgerald and Schmiz have not persuaded us that the jury was incapable of either of these tasks. As we have already stated, the evidence supporting their convictions was ample. Moreover, the jury was instructed specifically to "analyze what the evidence in the case shows with respect to each defendant leaving out of consideration any evidence admitted solely against some other defendant or defendants." The instructions pertaining to the individual counts reiterate that evidence is to be considered for each defendant separately. In *United States v. Crockett*, 979 F.2d 1204, 1217–18 (7th Cir. 1992), we held that in the presence of proper jury instructions and sufficient evidence supporting the defendant's conviction, the trial court did not abuse its discretion in trying the defendant along with a coconspirator who had been involved in the brutal murders of four people. This case does not demand a different result.

By affirming the denial of the motion for severance in this case, we are not, as Fitzgerald claims, sticking our heads in the ground and creating a law of guilt by association. "Our theory of trial relies upon the ability of a jury to follow instructions." *United States v. L'Allier*, 838 F.2d 234, 242 (7th Cir.1988). To do what Fitzgerald requests and assume, based on speculation and conjecture, that the jury cannot follow instructions or properly evaluate evidence would be an act of far greater ignorance.

### D. Sentencing

■ Fitzgerald claims that the trial court erred when, in determining his sentence, it held him responsible for between 3.2 and 5 kilograms of cocaine. He contends that the trial court did not determine with the requisite specificity the evidence upon which this finding was based, and he asks that we remand the case for resentencing for this reason.

■ For sentencing purposes, the relevant conduct in a drug distribution conspiracy consists of all transactions which were reasonably foreseeable to the defendant. *United States v. DePriest*, 6 F.3d 1201, 1213 (7th Cir.1993). Because the quantity of drugs involved is not a substantive element of the offense, the amount which the court determines to have been reasonably foreseeable to the defendant may be supported only by a preponderance of the evidence. *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir.1991). The question of how much is foreseeable is a factual determination, reversible only upon a showing of clear error. *DePriest*, 6 F.3d at 1212–13.

The record of the sentencing hearing reveals that the trial court made its own findings as to the amount for which Fitzgerald was responsible. Though the court acknowledged that there was no evidence that Fitzgerald ever sold cocaine, this was not, as the court correctly pointed out, dispositive of what was foreseeable to Fitzgerald. Based on the testimony of Sonny Madden's girlfriend, Tammy Jo Uselton, the court found that Fitzgerald had pooled his money with other members of the conspiracy on at least five occasions and that although on these occasions, Fitzgerald kept only about a gram for his own use, he helped the others mix and package the remaining cocaine for redistribution. The trial court specifically found that the evidence showed that Fitzgerald was not aware of the entire scope of the conspiracy and for that reason sentenced him based on an amount less than that of the whole conspiracy.

We believe that the trial judge's findings were not clearly erroneous and were made with sufficient particularity. We decline, therefore, Fitzgerald's invitation to remand this matter for resentencing.

### III.

The government ably presented evidence sufficient to support the charges in the indictment. Moreover, the trial court properly instructed the jury and did not abuse its discretion in denying the severance motion. Nor did the court err in its decision to sentence Fitzgerald. For all of the foregoing, the convictions of all the defendants and the sentence of Fitzgerald are

AFFIRMED.