UNITED STATES of America,
Plaintiff–Appellee,

v.

Frederick L. JEFFERSON,
Defendant–Appellant.

No. 96–5644.

United States Court of Appeals,
Sixth Circuit.

Argued July 31, 1997.

Decided July 8, 1998.

T. Clifton Harviel, Jr., Federal Public Defender (argued and briefed), Office of the Federal Public Defender for the Western District of Tennessee, Memphis, Tennessee, Mike Mosier, Mosier & Morris, Jackson, Tennessee, for Defendant–Appellant.

Richard Leigh Grinalds, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Jackson, Tennessee, Victor L. Ivy, Hardee, Martin & Jaynes, Jackson, Tennessee, for Plaintiff–Appellee.

Before: NORRIS, BATCHELDER, and DAUGHTREY, Circuit Judges.

ALAN E. NORRIS, J., delivered the opinion of the court, in which BATCHELDER, J., joined. DAUGHTREY, J. (pp. 446–49), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

ALAN E. NORRIS, Circuit Judge.

This appeal concerns convictions arising from a robbery and murder in Milan, Tennessee, on July 30, 1992. Defendant Frederick L. Jefferson appeals from convictions for conspiring to unlawfully interfere with interstate commerce by force in violation of 18 U.S.C. § 1951, interfering with interstate commerce by force in violation of 18 U.S.C. § 1951, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), and witness tampering in violation of 18 U.S.C. § 1512(a)(1)(C). Because the only issue on appeal that has not been directly confronted by this circuit concerns whether sufficient evidence existed to support defendant's witness tampering conviction, we discuss it below. All other issues raised on appeal are addressed in an unpublished Appendix to this opinion.

### I.

This case arises from a robbery that resulted in the murder of Elmus Simms in

Milan, Tennessee. On July 30, 1992, defendant accompanied Brian Williams and Yulanda Marshall on their visit to Abbott's Jewelry Store in Memphis, Tennessee. While a salesperson, Barbara Shelley, assisted Marshall with an engraving order, Simms, a jewelry salesman for Everwed Company, was showing a line of jewelry samples to the store owner. The trio of Marshall, Williams, and defendant left the store at the same time as Simms.

Evidence at trial established that the trio entered their car and followed Simms' vehicle. At some point during the chase, defendant displayed his previously concealed handgun to Marshall and Williams. As the cars entered Milan, Tennessee, the trio pulled their car next to Simms' automobile and defendant brandished his gun at Simms, who accelerated quickly, lost control of his car, and drove it into a ditch. Defendant left his vehicle and ran towards Simms' car. Although defendant acknowledges that as he approached Simms he recognized that Simms was severely injured and unconscious, he nevertheless shot him at least three times. Evidence at trial indicated that defendant's third shot hit Simms in the back while Simms was slumped over on his side with his head in the passenger side of the vehicle. Defendant then took the car keys and retrieved the jewelry samples from the trunk. The samples were worth over $75,000.

After defendant's acquittal on murder charges in state court, he was indicted in federal court for: (1) conspiring to interfere with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; (2) interfering with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; (3) use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); (4) murder to prevent communication to law enforcement authorities concern-

ing the robbery in violation of 18 U.S.C. § 1512(a)(1)(C); and (5) transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312.

After a three-day trial, a jury convicted defendant on all five counts, and the district court sentenced him to life plus sixty months' imprisonment. On appeal, defendant contests his convictions on the first four counts.

## II.

■■■ Defendant challenges his conviction for witness tampering on the ground of insufficient evidence. Specifically, defendant asks us to reverse this conviction because (1) the evidence was insufficient to prove that he possessed the requisite intent and (2) his conduct does not fit within the statutory language of this offense. A defendant raising such a challenge bears a heavy burden, as we view the evidence in the light most favorable to the prosecution. *United States v. Martin*, 897 F.2d 1368, 1373 (6th Cir.1990) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We defer to the jury's resolution of witness credibility and, where there is conflicting testimony, to its selection between competing inferences. *United States v. Gibson*, 675 F.2d 825, 829 (6th Cir.1982). The evidence need not be inconsistent with every conclusion save that of guilt, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt. *Martin*, 897 F.2d at 1373.

Defendant was convicted of violating 18 U.S.C. § 1512(a)(1)(C), which makes it a crime to kill a person "with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense. . . ." In determining the scope of the statute, we look first to its language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).[1] Under the

---

1. The quote, "the jury has spoken," has seemingly diverted the dissent's attention from the fact that Congress has spoken. Only when the language of a statute is not clear should we examine congressional intent or the statute's legislative history. *GTE Sylvania, Inc.*, 447 U.S. at 108, 100 S.Ct. 2051.

circumstances of this case, in order to obtain a conviction pursuant to § 1512(a)(1)(C), the government needed to prove that when defendant killed Simms he was motivated by a desire to prevent the communication between Simms and law enforcement authorities of information concerning defendant's involvement in the robbery.

■ Defendant contends that the evidence supports an inference that he shot Simms to prevent ·his interfering with defendant's scheme to seize the car keys in order that he might remove the samples from the automobile's trunk, and that this inference is at least equal in strength to any inference that he was motivated to shoot Simms in order that he might not implicate defendant in the commission of a crime. Defendant maintains that the witness tampering statute is a specific intent crime, and, as such, requires the government to prove that he killed Simms with the intent to prevent Simms from disclosing his identity to law enforcement. Although we agree with defendant's characterization of the government's burden of proof, it appears to us that, when the evidence is considered in the light most favorable to the prosecution, it more persuasively supports the government's theory of guilt than it supports defendant's theory of innocence.[2] Accordingly, the evidence was sufficient to support a reasonable jury in concluding that defendant was guilty of this charge.

The government adduced substantial evidence that defendant murdered Simms in violation of the statute. As defendant concedes, Simms was badly injured, indeed unconscious, when he approached Simms' vehicle. Defendant, nevertheless, shot his victim numerous times in the back with his .44 caliber pistol. A reasonable fact-finder could have rejected defendant's contention that he killed his victim in order to ease the burden of his planned robbery in light of his acknowledgment that he knew that Simms was unconscious prior to shooting him. Additionally, contrary to the dissent's assumption, the jury need not find that defendant's sole motivation in killing Simms was to prevent him from communicating to law enforcement authorities. The dissent's and defendant's contention that these two motivations—killing Simms in violation of § 1512(a)(1)(c) and to aid his robbery—are mutually exclusive is meritless.

Defendant also suggests that the witness tampering conviction should be reversed because the federal crime which Simms would have communicated to federal law enforcement authorities, robbery, had not been committed prior to Simms' murder. The argument is meritless since the statute's use of the words "commission or possible commission" clearly precludes the temporal restriction urged by defendant. Nothing in the statute requires that "possible commission" be read to mean "a crime that already may have been committed," as opposed to "a crime that may be about to be committed."

## III.

For the reasons stated herein and in the unpublished appendix to this opinion, we **affirm** defendant's convictions.

DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.

The jury, the representational embodiment of society-at-large, lies at the very foundation of our American jurisprudential system. To a panel of our fellow citizens we daily entrust matters of life and death, imprisonment, fame, and fortune. We have accorded such deference to the determinations of juries that we all can readily recall post-trial motions or clemency petitions being denied merely through invocation of the mantra, "The jury has spoken." Yet, interestingly, when the

---

**2.** Although the dissent recognizes and purports to review defendant's sufficiency of the evidence challenge under our deferential standard, this is not borne out in its analysis, e.g., the dissent's "stretch" in finding that shooting a victim *three* times—once in the back—is inconsistent with an intent to kill. Certainly a "reasonable juror" could find that shooting a victim at least three times, once after recognizing that the victim was unconscious, is indicative of a specific intent to silence the witness.

public becomes outraged at a state court jury's conclusion that constitutional safeguards must prevent a criminal defendant from being convicted of a crime, we do not hesitate to stretch upon the rack of dual sovereignty our conceptions of fairness and reason. I believe the majority's decision today has succeeded in stretching the reach of 18 U.S.C. § 1512(a)(1)(C) beyond its breaking point so as to impose severe punishments upon actions never envisioned by Congress to fall within the ambit of the statute. I thus respectfully dissent from the majority's decision to affirm Frederick Jefferson's conviction for witness tampering. Consequently, I would also find the challenge to the legal sufficiency of the count of the indictment alleging that crime to be moot. In all other respects, however, I concur in the majority's treatment of the issues raised on appeal.

## I.

After being acquitted in Tennessee state court of the murder of Elmus Gerald Simms, Jefferson was nevertheless indicted by a federal grand jury for killing Simms "with the intent to prevent the communication by Elmus Gerald Simms to a law enforcement officer [of] the fact that Elmus Gerald Simms could identify [the defendant] as the individual who had robbed Elmus Gerald Simms in violation of Title 18, United States Code, Section 1512(a)(1)(C) and (2)." A conviction under § 1512(a)(1)(C), however, requires proof of *specific* intent to prevent communication as at least part of the motivation for the violent act. *See United States v. Mullins*, 22 F.3d 1365, 1369 (6th Cir.1994). "Specific intent" denotes not an objective standard (*i.e.*, whether a reasonable person intended to prevent communication with law enforcement officers), but a subjective determination (*i.e.*, whether this particular defendant intended to prevent communication between the crime victim and a federal law enforcement official). *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.1992).

Based upon the evidence adduced at trial, I do not believe, even under the deferential standard of review we apply in sufficiency of evidence challenges, that a reasonable jury could determine *beyond a reasonable doubt* that Jefferson killed Simms to prevent him from communicating with the authorities.

Instead, the evidence, viewed in its entirety, establishes that Jefferson's interactions with Simms were directed not towards efforts at concealing his identity, but only towards the robbery of jewelry samples. After shooting Simms numerous times, the defendant grabbed the car keys from the ignition and proceeded to the back of Simms's car. He then heard a commotion, however, and squatted down to fire another shot toward the victim before grabbing the sample case containing the jewelry and fleeing. Had Jefferson's intent been to silence an eyewitness, greater care would have been taken at that point to ensure that Simms was no longer alive and able to report the crime to authorities. Moreover, the gunshots fired by the defendant were not aimed at Simms's head, neck, or chest, but rather were consistent with shots aimed at an individual to disable him to allow for completion of a robbery. In fact, a forensic pathologist testified that the paths of the bullets through the victim's body indicated that Simms was shot either once or twice in the left buttock as he was slumped down on the front seat of his car. An additional bullet track showed that the victim was shot another time in his lower body, but that the bullet happened to travel upward until it damaged Simms's lung and caused his death. Contrary to the conclusion drawn by the majority, under the facts of this case, I find nothing indicative of a specific intent to silence a witness merely from the firing of shots at the victim, especially given the normally non-fatal entry wounds of the bullets.

Second, Jefferson's reactions to other eyewitnesses indicates his lack of interest in preventing identification or reporting of the crime. For example, Barbara Pitts and Richard Stout testified that they viewed the entire occurrence from a vantage point approximately 70 yards from the crime scene. Furthermore, while at the trunk of the car retrieving the sample case, Jefferson looked

directly at the two witnesses but took no efforts to dissuade them from relating the happenings to police.

Even more telling, Charles Taylor testified that, upon seeing Simms's vehicle crash down the embankment into the soybean field, he stopped his car only one-and-one-half car lengths behind the defendant's vehicle on the roadway and watched the robbery unfold from a distance of 25–30 yards. Taylor left the scene as Jefferson climbed back up to his car, but the defendant's Chrysler soon passed Taylor in his vehicle on the road. In doing so, however, Jefferson did nothing to threaten, harm, or intimidate the eyewitness.

Kurt Moore, then a student at the local high school, also observed Simms's car crash into the field. Moore exited his own vehicle and walked down the embankment to within 30 yards of the scene of the robbery and shooting. Again, Jefferson took no action to prevent the vulnerable witness from reporting his observations to the police. If Jefferson's specific intent in shooting Simms were to ensure that no witnesses would be able to report his illegal actions to federal officials, it is inconceivable that he would ignore the four eyewitnesses who were able to observe his actions from close range. I believe, therefore, that under any interpretation of the evidence before the jury, the defense has established reasonable doubt that the motive for the shooting of Simms was interference with a witness to a federal crime and not merely facilitation of a robbery.

## II.

Additionally, the government in its brief and the majority in its opinion cannot cite to a single reported court decision applying the provisions of 18 U.S.C. § 1512(a)(1)(C) to a situation such as the one presented in this case. The paucity of such legal support is not surprising. The statutory provision at issue in this appeal was simply not intended to reach actions taken only to enable the commission of an underlying crime. In the usual § 1512(a)(1)(C) case, the efforts of a defendant to silence a witness or co-defendant occur after completion of the base offense. *See, e.g., United States v. Bell*, 113 F.3d 1345, 1347 (3d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 447, 139 L.Ed.2d 383 (1997); *United States v. Edwards*, 36 F.3d 639, 642 (7th Cir.1994); *United States v. Clark*, 988 F.2d 1459, 1462 (6th Cir.1993); *United States v. Galvan*, 949 F.2d 777, 780 (5th Cir.1991); *United States v. Gonzalez*, 922 F.2d 1044, 1047 (2d Cir.1991).

The majority correctly holds, however, that the reach of the statute may not be restricted temporally only to such situations. The clear language of § 1512(a)(1)(C) allows application of the statute's prohibitions to the prevention of communication relating to the *"possible commission"* of a federal offense. Nevertheless, such application does not relieve the prosecution of its burden to establish *beyond a reasonable doubt* that the killing or attempted killing was accomplished for the specific purpose of preventing communication about another crime to the authorities. If a killing or attempted killing were to coincide with the commission of the underlying offense, therefore, the government must establish through introduction of specific pieces of evidence a defendant's pre-existing intent to eliminate witnesses to his or her acts. In this case, the government quite simply has failed to satisfy the key evidentiary requirement that differentiates a § 1512(a)(1)(C) violation from any crime in which a defendant kills or attempts to kill the crime victim.

Without question, the killing of a crime victim prevents that individual from communicating with federal authorities about the commission or possible commission of a federal offense. It is not simply recognition of that axiomatic principle that is incorporated into the proscriptions of 18 U.S.C. § 1512(a)(1)(C), however. Instead, the statute requires proof that the defendant specifically intended to kill or to attempt to kill another person precisely to prevent such communication. The evidence adduced in this matter creates at least a reasonable doubt whether this critical element of the offense was established in Jefferson's killing of an innocent jewelry salesperson. The defendant's actions during and immediately after the robbery, his complete disregard for

the presence of other witnesses to his crime, and the absence of any evidence of a pre-existing intent to silence such witnesses conclusively establish that the tragic murder of Elmus Gerald Simms was committed only to effectuate and facilitate the planned robbery and not to prevent reports of the offense. I thus dissent from the majority's opinion, which may be read as an attempt to bootstrap sympathy for an innocent victim and outrage at a callous crime into constitutionally sufficient evidence for a § 1512(a)(1)(C) conviction.

Given my belief that insufficient evidence was adduced to support a conviction for the crime charged in count 4 of the indictment, I would also hold that Jefferson's challenge to the legal sufficiency of that count of the charging document is now moot. In all other respects, I concur in the majority's analysis of the issues presented on appeal.