RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0278P (6th Cir.)
File Name: 04a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 03-1102

RICHARD LEE BOWDEN,
*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00035—David W. McKeague, District Judge.

Argued: June 16, 2004

Decided and Filed: August 24, 2004

Before: GILMAN and ROGERS, Circuit Judges;
FORESTER, Chief District Judge.*

---

## COUNSEL

**ARGUED:** Lesley S. Kranenberg, KRANENBERG & McCARTHY, Battle Creek, Michigan, for Appellant. B.

---

\* The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

Rene Shekmer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Lesley S. Kranenberg, KRANENBERG & McCARTHY, Battle Creek, Michigan, for Appellant. B. Rene Shekmer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

ROGERS, Circuit Judge. Richard Lee Bowden appeals his conviction for possessing with intent to distribute more than 50 grams of cocaine base ("crack cocaine") and sentence of 168 months' imprisonment. He raises three assignments of error. First, Bowden maintains that the district court erred when it denied his motion to suppress evidence obtained by police during a search of his father's home and garage and his motion to suppress inculpatory statements that he made during that search. Second, Bowden claims that the Government's evidence was insufficient to support the conviction. Third, Bowden asserts that the district court improperly imposed a two-level increase in offense level for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Because we are not persuaded by Bowden's arguments, we affirm the judgment of the district court in all respects.[1]

---

[1] Bowden also raises several issues that are not sufficiently briefed to determine the facts or the law on which Bowden relies to make them. These include contentions that: (1) his father's consent to the search was involuntary; (2) the protective sweep of the basement violated his Fourth Amendment rights; and (3) the police lack sufficient procedural standards for the "knock-and-talk" investigative technique. Conclusory, undeveloped and perfunctory arguments are deemed waived on appeal, and we need not discuss them further. *See Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002).

On September 6, 2001, Officers Brian Beauchamp and Michael Hecht went to 521 Harding Place in Kalamazoo to follow up on an informant's tip that Bowden was dealing crack and powder cocaine out of the residence. On arriving at the house, Beauchamp and Hecht found Bowden mowing the back lawn. The officers identified themselves to Bowden and told him that they were investigating a report that there was methamphetamine in the house and asked if they could search the house. Bowden told the officers that they could walk through the house, but that they were not allowed to lift couches or look under the beds.

On entering the house, the officers climbed the stairs and first found a child's bedroom where they found a plastic baggie with the corners cut off, which the officers took to be a sign of drug sales. After inspecting the top floor of the house, the officers looked around in the kitchen and dining room area, where Hecht found a small plastic baggie containing several Vicodin pills. Bowden explained that he was taking the Vicodin pills for pain after having dental work done, but could not identify the dentist who prescribed the pills or locate the prescription bottle.

After finding the pills, the officers questioned Bowden about his criminal history. Bowden told them that he had been convicted for possession of crack ten years prior. Beauchamp contacted the dispatcher on his mobile phone to verify Bowden's criminal record and discovered that Bowden actually had two prior drug convictions. Beauchamp asked for consent to search the house, but Bowden refused because he had to drive his sister somewhere. Beauchamp told Bowden that he was free to leave, but that the officers would secure the house while they obtained a search warrant. Before leaving, Bowden went out to the garage and locked it to prevent anything from being stolen.

After Bowden left, the officers went back into the house to speak with Bowden's elderly father, Cleveland, who lived in the house. The officers decided to attempt to procure

Cleveland's consent to search the house; Cleveland agreed to a search of his own bedroom, and a broader consent once his daughter Dorothy arrived. Officer Beauchamp also conducted a protective sweep of the basement, in which he saw a number of small Ziploc baggies and a marijuana roach.

After Dorothy arrived, Cleveland consented to a search of the house. Bowden returned later and agreed to permit Beauchamp to search his bedroom, but after Beauchamp began to ask him about his connections to an individual named Tony Scott, Bowden revoked the consent and informed Beauchamp that the officers would need a warrant to continue the search. Before Bowden revoked the consent, however, Beauchamp found a scrap of paper containing numbers that the officers concluded were drug tabulations.

Shortly after Bowden revoked the consent, Officer Brett Hake, who had been searching the garage, contacted Beauchamp on his two-way radio and asked Beauchamp to come to the garage to see something he had found. En route to the garage, Beauchamp learned that Cleveland had decided to revoke the consent for the entire house on the advice of family members. When Beauchamp arrived at the garage to tell Hake that the consent had been revoked, Hake showed Beauchamp a quantity of crack cocaine that Hake had found in a sock.

After showing Bowden the crack cocaine recovered from the garage, the officers were unable to procure renewed consent to search the house and went to obtain a search warrant. On executing the search warrant, the officers recovered a handgun and a black shaving bag containing roughly $15,000 cash. The officers asked Bowden whether they might find his fingerprints on the drugs or the gun, to which Bowden responded, "You won't find my fingerprints on my gun in the garage."

After being indicted on the drug charge, Bowden made three suppression motions: (1) a motion to suppress

inculpatory statements Bowden made to the police during the search of the house, (2) a motion to suppress the evidence obtained pursuant to the search warrant because the police used an improper "knock and talk" procedure to generate sufficient probable cause to support the warrant, and (3) a motion to suppress the evidence obtained through the search warrant. The district court denied all three of the motions. Bowden was convicted after a jury trial.

At sentencing, the Government sought a two-level increase in offense level for the firearm that was recovered in the search. *See* U.S.S.G. § 2D1.1(b). The district court rejected Bowden's argument that the weapon was "not the type used in drug trafficking" and imposed the two-level increase. After calculating the offense level and Bowden's criminal history points, the district court sentenced him, at the bottom end of the range, to 168 months of imprisonment.

First, the district court did not err when it refused to suppress the evidence obtained from the search of the garage, because the police reasonably relied on a valid grant of consent to search the premises.[2] Bowden contends that his father Cleveland lacked actual or apparent authority to

---

[2]In reviewing the denial of a suppression motion, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *See United States v. Fullerton*, 187 F.3d 587, 590 (6th Cir. 1999).

Initially, we assume that Bowden has standing to object to the warrantless search of his father's home and garage. Although Bowden did not maintain a permanent residence at his father's home, his familial ties to the homeowner, his permanent maintenance of a bedroom at the house and his occasional sleeping there are sufficient to give rise to a reasonable expectation of privacy. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (reasoning that facts indicating a "degree of acceptance into the household" are necessary to establish reasonable expectation of privacy); *Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (holding that an overnight guest has reasonable expectation of privacy in host home); *United States v. Heath*, 259 F.3d 522, 533 (6th Cir. 2001) (holding that defendant, who was lessee's cousin and slept on the couch "once a week for approximately two years," had standing to object to search).

consent to a search of the garage because he could not effectively render blanket consent to search the entire premises. Bowden's argument is meritless; Cleveland had at least apparent authority to consent to the search, and the police reasonably relied on that consent.

Bowden argues that, when Cleveland denied the police consent to search his son's bedroom, the police should have been on notice that Cleveland lacked authority to grant unlimited consent to search the remainder of the property and that the police had an affirmative duty to determine Cleveland's nexus to each individualized segment of the property prior to searching. Unsurprisingly, Bowden does not cite a single case supporting this proposition. When a person with actual or apparent authority gives the police consent to search, that consent validates a warrantless search as long as the police reasonably comply with the scope of the search. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003). If, as in this case, a property owner restricts the police from searching a certain area of the property, the police are not necessarily unreasonable in concluding that the areas which were not included in the restriction are within the scope of consent.

We further reject Bowden's argument that the crack cocaine should have been excluded because the police recovered it from the garage after Cleveland revoked the consent to search. The district court concluded that the officer searching the garage recovered the sock containing the crack cocaine from the rafters of the garage before Cleveland expressed his revocation of the consent to the officers in the house. This conclusion is a factual finding, which we review for clear error. *See United States v. Buchanon*, 72 F.3d 1217, 1222-23 (6th Cir. 1995). Although it is equally plausible that the officer could have recovered the sock after the consent was revoked, that does not establish that the district court's conclusion was clearly erroneous. Moreover, even if the district court's factual finding were clearly erroneous, Cleveland revoked the consent in the house at nearly the same

time the officer recovered the crack cocaine from the garage. It would have been virtually impossible for the officer to have become aware of the revocation of the consent before he recovered the sock. Therefore, the officer acted in good faith based on what he believed to be valid consent.

Next, we reject Bowden's claim that the district court should have suppressed his inculpatory statements. Bowden failed to establish that he was in custody at the time he made the statements. He maintains that the totality of the circumstances—"the discovery of the drugs, four armed police officers, and the coerciveness of the setting"—created a situation in which Bowden, although not actually confined, was effectively in custody. Bowden has not, however, shown any facts indicating that he was in custody.

*Miranda* requires that police officers warn a suspect of his rights only after the suspect is "taken into custody or otherwise deprived of his freedom of action in any significant way."[3] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In determining whether a suspect is in custody, the court must look to the totality of circumstances surrounding the interrogation to determine whether the suspect was either formally placed under arrest or was restrained in movement in a manner similar to a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994). Among the factors the court should consider in examining the totality of the circumstances are: "(1) the purpose of the questioning, (2) whether the place of questioning was hostile or coercive, (3) the length of the questioning, and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the

---

[3]The question of whether a defendant was in custody, and therefore entitled to *Miranda* warnings, is a mixed question of law and fact that we review here *de novo*. *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003).

suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . [or] acquiesced in their requests to answer some questions." *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003).

The questioning in this case did not amount to custodial interrogation. First, the officers did not formally arrest Bowden until seven months after Bowden made the incriminating statements. Second, Bowden was not handcuffed or otherwise restrained, and he was not threatened with anything except the possibility of federal prosecution. Third, and most importantly, Bowden terminated the interview after making the statement that the police would not find his fingerprints on "his gun." These facts generally show that Bowden was not in custody. Moreover, the fact that Bowden effectively terminated the interview shows willing acquiescence to answer police questions prior to the termination and freedom to terminate the discussion at will. The district court was accordingly correct in denying Bowden's suppression motions.

Contrary to Bowden's second argument, the Government's evidence was sufficient to convict because a rational jury, based on the evidence presented in the Government's case, could have concluded beyond a reasonable doubt that Bowden was guilty of the offense.[4] Bowden maintains that, because the evidence showed that a neighbor was momentarily unsupervised in the garage, no rational jury could have concluded, beyond a reasonable doubt, that the

---

[4]We apply a highly deferential standard in reviewing a jury verdict, asking whether, viewing the evidence in a light most favorable to the prosecution, any reasonable jury could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The evidence need not be inconsistent with every conclusion save that of guilt, so long as it establishes a case from which the jury could find the defendant guilty beyond a reasonable doubt." *United States v. Jefferson*, 149 F.3d 444, 445 (6th Cir. 1998).

crack cocaine recovered from the garage belonged to Bowden.

Although a reasonable jury could have concluded that the neighbor might have been the true owner of the crack, and chosen to acquit Bowden, it is not enough to overturn a jury verdict to show that there was a plausible alternative. We may overturn the jury's verdict only if it is unreasonable. In this case, the jury had ample evidence from which it could have concluded that Bowden was the owner of the crack cocaine recovered from the garage. The simple fact that Bowden can identify an alternative theory of the crime does not compel the reversal of the jury's verdict.

At trial, the Government put forward the following evidence: (1) testimony that Bowden had regular access to the house and to the garage; (2) plastic baggies recovered from the house with the corners removed, which the police officers testified was indicative of on-going drug distribution activities; (3) Beauchamp's testimony that he recovered from Bowden's bedroom drug tabulations recorded on slips of paper; (4) Beauchamp's testimony that Bowden went out to the garage and was looking up at the rafters in the general area where the crack was later located; (4) testimony that the crack was divided into quarter-ounce quantities and packaged in the corners of plastic baggies; (5) $15,520 in cash recovered from the basement in a shaving bag also containing pay stubs in Bowden's name; and (6) Bowden's admission of ownership of the handgun that was recovered alongside the crack. Even in the face of Bowden's alternative theory that the neighbor planted the crack cocaine in the garage, there was sufficient evidence linking Bowden to drug dealing in the house and the garage that, viewed in the light most favorable to the Government, could enable a reasonable juror to find Bowden guilty beyond a reasonable doubt.

Finally, the district court did not err in imposing a two-level increase in sentencing offense level pursuant to U.S.S.G

§2D1.1(b)(1).[5]  Bowden argues that there was insufficient evidence to show that he possessed the firearm recovered with the crack and that "it was clearly improbable that the weapon was used in connection with drugs."[6] Bowden's admission of ownership of the gun, alongside the fact that the gun was found lying near the drugs, were more than sufficient to connect the gun to the underlying offense.

Bowden bears the burden of showing clearly that the weapon recovered was unconnected with the offense. *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994). All he offers in this regard is the general statement that the .22 revolver recovered from the scene was "rather decrepit" and that "[t]here was no evidence that this was the type of weapon used by drug dealers." These assertions do not lead to the conclusion that the district court erred. First, these claims are unsupported by any evidence in the record. Second, even if there were factual support for these claims, nowhere in the guideline does it state that the increase only applies to weapons that are shiny and new, or are just like the guns every other drug dealer uses. All that is required is that the defendant possess a firearm in connection with a drug offense.

Cases in which this court has declined to impose the offense-level increase, because it was "clearly improbable"

---

[5]After oral argument, Bowden asserted that the Supreme Court's opinion in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2351 (2004), mandated the reversal of his sentence because the district court applied an enhancement on the basis of an aggravator "which was not a necessary part of the jury's verdict." Generally, we do not consider issues raised for the first time on appeal. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). In any event, the argument is precluded by our intervening decision in *United States v. Koch*, No. 02-6278, order filed Aug. 13, 2004.

[6]The district court's determination that Bowden possessed a firearm in connection with a drug crime is subject to review for clear error. *United States v. Stewart*, 306 F.3d 295, 326 (6th Cir. 2002).

that the weapon related to the drug crime, are distinguishable. For example, in *Zimmer*, the firearms in question were three hunting rifles recovered from the living room of the residence, while the drugs were recovered from the basement. *Id*. at 291. The *Zimmer* court concluded that it was clearly improbable that the guns were connected to the offense because the defendant hunted on the property regularly and because it was not a case in which drug dealing was taking place out of his home. *Id*. In *United States v. Garner*, 940 F.2d 172, 175 (6th Cir. 1991), the weapon in question was an antique single-shot derringer that was unloaded and locked in a safe separate from the drugs recovered from the scene.

Unlike in those cases, the weapon at issue here is not clearly associated with some activity other than drug distribution. Because the gun was lying immediately next to the drugs, Bowden's only basis for his assertion that the gun was probably not linked to the drug crime is the notion that the weapon was "decrepit." Even if that assertion were supported by the evidence, there is no basis in logic or law for declining to impose the enhancement on drug dealers whose guns are not as well-kept or as up-to-date as other drug dealers' guns.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.